UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11005-RWZ

| | |
|---|---|
| WALTER S. PREBLE,<br>    Plaintiff | )<br>)<br>) |
| v. | )<br>) |
| TRANSPORTATION DISPLAYS, INC.<br>d/b/a VIACOM OUTDOOR, and<br>PAINTERS AND ALLIED TRADES<br>DISTRICT 35, IUPAT, AFL-CIO,<br>    Defendants | )<br>)<br>)<br>)<br>) |

**THE AFFIDAVIT OF WALTER S. PREBLE IN OPPOSITION TO THE
MOTION OF TRANSPORTATION DISPLAYS FOR SUMMARY JUDGMENT**

I, Walter S. Preble, upon oath, do depose and state as follows:

1. I am a white male, who was born on June 4, 1955.

2. I am now forty-nine years of age.

3. I worked for Transportation Displays (CBS) and its predecessors-in-interest since June 16, 1977.

4. As of December 12, 2001, I was the second most senior union employee at the company's Randolph office. See Exhibit 1 attached hereto, Viacom's seniority roster.

5. I was also the third oldest union employee. See Exhibit 4 to the **Affidavit of Paul L. Nevins.**

6. After Transportation Displays acquired the business in 2000, it hired seven new employees who performed the same work as I.

2

7.      All but one of these employees were substantially younger than I; five of them were under forty years of age. See Exhibit 4 to the **Affidavit of Paul L. Nevins.**

8.      Sometime in the fall of 2000, after Transportation Displays acquired the company, I approached the new Operations Manager, Richard MacLean to inform him that I had previously had a heart attack and that I suffered from Diabetes (Stage II).

9.      In response, Mr. McLean told me to take it easy whenever I needed to.

10.     On December 11, 2001, I reported to work at Transportation Displays' Randolph office.

11.     As per custom and practice, I and a co-worker were assigned a company van and given our work locations.

12.     That particular day, my co-worker and I were assigned to place advertising displays on buses at the MBTA's Dudley Street Garage in Roxbury, the Cabot Street Garage in South Boston, and the Albany Street Garage which is next to the Southeast Expressway.

13.     During the morning of December 11, 2001, my co-worker and I worked at the Dudley Street MBTA Garage in Roxbury and at the Cabot Street Garage.

14.     Around lunch time, I dropped my partner off at the MBTA's Albany Street Garage, where he began to install signs on the buses.

15.     I agreed, after lunch, to return to the Cabot Street Garage in South Boston to check whether any additional buses were now parked there, and that I would

3

to return to Albany Street to work with my partner until the end of the work day at 4:00 P.M.

16. After I dropped my partner off at the Albany Street Garage, I drove to my house at 589 East Fifth Street in South Boston to eat lunch and to check my blood-sugar levels.

17. My residence is about one mile from the Cabot Street Garage.

18. Because of my diabetes, I try to avoid foods which exacerbate my condition and I check my blood-sugar levels daily.

19. Because of the fact that the lunch period occurs when employees are travelling to MBTA locations, employees often take lunch at Burger King or Dunkin Donuts. See Exhibit 7 attached the **Affidavit Of Paul L. Nevins,** the notes of Charles Fogell, Business Agent of my union, of his initial review of reason given my the company for my discharge.

20. Transportation Displays never negotiated with the union, or issued a work rule, which prohibited employees from using the company van to get lunch when assigned to a work area. See Exhibit 7 attached the **Affidavit Of Paul L. Nevins,** the notes of Charles Fogell, Business Agent of my, of his initial review of the reason given by the company for my discharge. See also Exhibit 2 attached hereto, Exhibit B the Collective Bargaining Agreement, **TDI Work Rules.**

21. In addition, although Mr. McLean told employees that they were not to go "off route," Mr. McLean never defined for us what constituted "our routes" or what he meant by "not leaving our area."

4

22.   After I left my house and drove back toward the Cabot Street Garage, I was involved in a very minor traffic incident - in which I clipped the taillight on a parked SUV.

23.   I immediately identified himself to a police officer who was directly a detail nearby, and I reported that accident to my employer. See Exhibit 3 attached hereto, the police officer's confirmation of my statement.

24.   The following day, I was discharged from employment by Transportation Displays, purportedly for unauthorized use of a company vehicle. See Exhibit 4 attached hereto.

25.   At the time I was discharged from employment, I had an unblemished driving record, according to the Massachusetts Registry of Motor Vehicles. See Exhibit 5 attached hereto.

26.   After my discharge, I learned that another employee, Blake Beath, failed to complete his work assignments and falsified work reports, but he received only a five day suspension. See Exhibit 8 to the **Affidavit Of Paul L. Nevins**.

27.   Mr. Beath was hired in November of 2000 and was 37 years of age. See Exhibit 4 to the **Affidavit Of Paul L. Nevins**.

28.   After my discharge, I also learned that another employee, Hak Ok, failed to call in sick or to show up for work, but was apparently docked only one day's pay. See Exhibit 9 to the **Affidavit Of Paul L. Nevins**.

29.   Mr. Ok was hired in February of 2001 and was 36 years of age,  See Exhibit 4 to the **Affidavit Of Paul L. Nevins**.

5

30. After my discharge, I learned that a third employee, John Benoit, frequently called in sick and subsequently failed to show up for work over a four day period; despite past similar offenses, he was only issued a written warning. See Exhibit 10 to the **Affidavit Of Paul L. Nevins**.

31. Mr. Benoit was hired in November of 2000 and was 41 years of age. See Exhibit 4 to the **Affidavit Of Paul L. Nevins**.

32. Finally, after my discharge, I learned that a fourth employee, David Long, was suspended for only three days because of excessive absenteeism, despite his having received many prior verbal warnings, and his having been absent on eight separate occasions after he received a written warning.

33. In addition, Mr. Long failed to report to work and did not call in on May 28, 2002. See Exhibit 11 to the **Affidavit Of Paul L. Nevins**.

34. Mr. Long was hired on October 14, 2000 and was 25 years of age, See Exhibit 4 to the **Affidavit Of Paul L. Nevins**.

Sworn to under the pains and penalties of perjury this 20th day of November, 2004.

                                                                                     *[signature]*
Walter S. Preble

6

**NORFOLK ss.**

Before me the above signed, Walter S. Preble, known to me personally, did appear and state that he had made the above statement of his own free act and will and that the facts alleged were, to the best of his knowledge, true.

*[signature]*
Paul L. Nevins
Notary Public
My commission expires:
June 11, 2010

### Certificate of Service

The undersigned hereby certifies that, on November 24, 2004, he served a true copy of the foregoing upon all parties by causing the copies sent electronically and to be deposited in the United States Mail postage prepaid, addressed to:

Michael A. Feinberg, Esquire
Jonathan M. Conti, Esquire
Feinberg, Campbell & Zack, P.C.
177 Milk Street
Boston, MA 02109

and:

Mark W. Batten, Esquire
**Proskauer Rose LLP**
One International Place
Boston, MA 02110

*[signature]*
Paul L. Nevins