## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11005-RWZ

| | |
|---|---|
| WALTER S. PREBLE,<br>  Plaintiff | ) <br> ) <br> ) |
| v. | ) <br> ) |
| TRANSPORTATION DISPLAYS, INC.<br>d/b/a VIACOM OUTDOOR, and<br>PAINTERS AND ALLIED TRADES<br>DISTRICT 35, IUPAT, AFL-CIO,<br>  Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## THE PLAINTIFF'S RESPONSE TO THE DEFENDANT'S STATEMENT OF ALLEGEDLY UNDISPUTED FACTS, IN OPPOSITION TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The plaintiff submits the following response to each of the defendant's 54 numbered statements of allegedly undisputed, material facts. The plaintiff categorically denies 9 of the defendant's numbered sets of facts which defendant claims are material and undisputed.[1] In addition, the plaintiff has moved to strike 22 of the alleged statements of fact because they are immaterial, or irrelevant to the case, and are not admissible under the federal rules of evidence, as provided for under Fed. R. Civ. P. 56(e).

The documentary evidence upon which this plaintiff's response is based,

---

1.    The plaintiff also notes that, in response to 31 separately numbered, factual allegations set forth in the plaintiff's **Verified Complaint For Injunctive Relief And Damages** under her **Statement of The Facts,** the defendant denied, in whole or in part, 19 of the plaintiff's factual allegations.

Thus, the defendants has admitted, in whole or part, only 12 of the statements set forth in the plaintiff's **Verified Complaint.** Because a number of the defendant's denials create critical issues of material fact the entry of summary judgment, as a matter of law, is precluded.

2

coupled with the pleadings, rebut the salient facts upon which the defendant

bases its motion for summary judgment:

### Facts

1.    TDI is in the business of outdoor advertising.

**The Plaintiff's Response To The First Statement(s):** The statement is admitted.

2.    Among other things, TDI Employees, under contract to the Massachusetts

Bay Transit Authority("MBTA"), install advertising materials on buses, subway

cars, and commuter trains, including the metal frames which hold those

materials. Deposition of Walter Preble ("Preble Dep.") at 20-22. A copy of cited

excerpts from the Preble Deposition is attached to the Declaration of Mark W.

Batten ("Batten Declaration"), submitted herewith, at Tab A.

**The Plaintiff's Response To The Second Statement(s):** The statement is

admitted.

3.    In general, Preble's responsibility on a typical day was to drive a TDI-

supplied truck to the MBTA "barns", where he would install advertising on the

vehicles there. Id. at 27-28.

**The Plaintiff's Response To The Third Statement(s):** The statement is

admitted.

4.    Preble had been working for a company known as Park Transit, which he

testified was acquired by TDI, also know as Viacom Outdoor, in the summer of

2000. Id. at 26.

3

**The Plaintiff's Response To The Fourth Statement(s):** The statement is admitted.

5.    After TDI acquired Park Transit, Richard MacLean became Preble's supervisor. Id.

**The Plaintiff's Response To The Fifth Statement(s):** The statement is admitted.

6.    After TDI acquired Park Transit, employees were required to travel to and from customer sites in company vans, rather than driving their own vehicles, as they had when working for Park Transit. Id. at 28-29.

**The Plaintiff's Response To The Sixth Statement(s):** The statement is admitted.

7.    MacLean told the employees on several occasions that they were not to drive the company trucks off route. Id. at 30. Preble considered the instruction vague. Id.

**The Plaintiff's Response To The Seventh Statement(s):** The statement is denied. The employees worked at a number of MBTA garages throughout the MBTA area; hence, there was no fixed route, nor did Preble believe that MacLean could forbid employees to get lunch when they needed to eat.  See Preble's second deposition, at page 94.

8.    Before the incident for which he was terminated, MacLean had told Preble not to go home for lunch. Id. at 94.

**The Plaintiff's Response To The Eighth Statement(s):** The statement is denied. Preble kept his blood testing equipment in his house. See Preble's second deposition, at page 94. Further, Preble testified much earlier in time that, what in

4

fact, MacLean had told him was not to go off route. See Exhibit 6 to the **Affidavit of Paul L. Nevins**, the deposition of Walter Preble, at pages 19 and 20. **The Plaintiff's Evidentiary Objection To The Eighth Statement(s):**[2]

Fed. R .Civ.P. 56(e) provides, in relevant part, that "Supporting and opposing affidavits...shall set forth such facts as would be admissible in evidence..." The defendant's **Statement(s) Number 8** must be stricken because it is irrelevant evidence under Fed. Rule Evid. 402. The evidence shows that no written rule was ever promulgated by the company, or negotiated with the union, about where employees could go for lunch or how they could get to lunch, nor were employees paid by the company during their lunch break. See Exhibit 5 to the **Affidavit Of Paul L. Nevins, Deposition of Richard MacLean**, at pages 30-34. Further, there is no evidence that the plaintiff had ever received a written warning or suspension, prior to his discharge, for having eaten his lunch at home when he worked in the vicinity of his house.

9.      In 2000, Preble drove a TDI truck into an overhead door at the TDI garage in Randolph, Massachusetts. Id. at 31-32.

**The Plaintiff's Evidentiary Objection To The Ninth Statement(s):**[3] Fed. R. Civ. P. 56(e) provides, in relevant part, that "Supporting and opposing affidavits...shall set forth such facts as would be admissible in evidence..." The defendant's

---

2.      See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

3.      See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

5

**Statement(s) Number 9** must be stricken because, as defendant concedes, Preble was not disciplined in any way for this incident. Hence, the statement is inadmissible under Fed. R. Evid. 40, as irrelevant; it is more prejudicial than probative under Fed. R. Evid 403; and it is offered as inadmissible conduct evidence in violation of Fed. R. Evid. 404.[4]

10.    Preble was not disciplined for the overhead door accident, except that he was spoken to about it and was criticized for refusing to take responsibility for it. Id. at 34-35.

**The Plaintiff's Evidentiary Objection To The Tenth Statement(s):**[5] See the reasons cited in his objection to the **Ninth Statement** above.

11.    In approximately September 2000, Preble locked his keys in the truck and called a co-worker to drive into Boston from Randolph to unlock it. Id. at 36-37.

**The Plaintiff's Evidentiary Objection To The Eleventh Statement(s):**[6] See the reasons cited in his objection to the **Ninth Statement** above.

---

4.    "As a general rule, evidence of a person's character is inadmissible to prove that he acted in conformity with that character on a particular occasion."Liacos, **Handbook of Massachusetts Evidence** (1994), Chapter 4, § § 4.4. See also Commonwealth v. Doherty, 23 Mass. App. 633, 636-637, 504 N.E.2d 681, 683-684(1987), review denied, 399 Mass. 1105.
    See also **Fed. R. Evid 404(a)**: "Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion..."

5.    See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

6.    See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

6

12.    At the time of the September 2000 incident, Preble was at home, having driven the truck to his house in South Boston to eat lunch. Id. at 36.

**The Plaintiff's Evidentiary Objection To The Twelfth Statement(s):**[7] See the reasons cited in his objection to the **Ninth Statement** above.

13.    Preble's home is east of the easternmost MBTA barn that he services south of the city. _See Preble Dep. at 72-74. A map of the relevant area showing the location of Preble's home and two of the MBTA barns, including the easternmost, is attached to the Batten Declaration at Tab B.

**The Plaintiff's Response To The Thirteenth Statement(s):** The statement is denied. Preble also worked at the MBTA's Charlestown garage, which is northeast of his home in South Boston. See Exhibit 6 to the **Affidavit of Paul L. Nevins**, the deposition of Walter Preble, at page 10.

14.    Preble believes that MacLean learned about the incident in which he locked his keys in the truck, but MacLean did not speak to him about it at the time and he was not disciplined. Id. at 38.

**The Plaintiff's Evidentiary Objection To The Fourteenth Statement(s):**[8] See the reasons cited in his objection to the **Ninth Statement** above.

15.    In approximately October 2000, Preble became frustrated by a driver in front of him who  he considered to be driving too slowly. Id, 41-42.

---

7.    See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

8.    See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

7

**The Plaintiff's Response To The Fifteenth Statement(s):** The statement is denied. Preble did not testify that he was frustrated. See his actual testimony at pages 41-42. Also, see Exhibit 6 to the **Affidavit of Paul L. Nevins**, the deposition of Walter Preble, at pages 8-9.

**The Plaintiff's Evidentiary Objection To The Fifteenth Statement(s):**[9] See the reasons cited in his objection to the **Ninth Statement** above. Preble was not discharged because of his driving habits. See Exhibit 4 to the **Affidavit Of Walter S. Preble In Opposition To The Motion Of Transportation Display For Summary Judgment.**

16.    After honking his horn twice without success, Preble pulled his truck into the left lane and passed the driver. Id. at 42-43.

**The Plaintiff's Response To The Sixteenth Statement(s):**The statement is denied. Preble did not testify that he beeped his horn twice immediately before he passed the driver. Also, see Exhibit 6 to the **Affidavit of Paul L. Nevins**, the deposition of Walter Preble, at pages 8.

**The Plaintiff's Evidentiary Objection To The Sixteenth Statement(s):**[10] See the reasons cited in his objection to the **Ninth Statement** above. Preble was not discharged because of his driving habits. See Exhibit 4 to the **Affidavit Of Walter**

---

9.    See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

10.    See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

8

**S. Preble In Opposition To The Motion Of Transportation Display For Summary Judgment.**

17. Preble contends that the "lane opened up" with a "broken white line" that became a solid white line closer to the intersection, and that passing was legal until the white line became solid. Id. at 43.

**The Plaintiff's Evidentiary Objection To The Seventeenth Statement(s):**[11] See the reasons cited in his objection to the **Ninth Statement** above. Preble was not discharged because of his driving habits. See Exhibit 4 to the **Affidavit Of Walter S. Preble In Opposition To The Motion Of Transportation Display For Summary Judgment.**

18. A police officer visited the TDI garage on the evening of the passing incident described above. Id. at 42.

**The Plaintiff's Evidentiary Objection To The Eighteenth Statement(s):**[12] See the reasons cited in his objection to the **Ninth Statement** above. Preble was not discharged because of his driving habits. See Exhibit 4 to the **Affidavit Of Walter S. Preble In Opposition To The Motion Of Transportation Display For Summary Judgment.**

---

11. See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

12. See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

9

19.    MacLean learned of the passing incident, and characterized it as "road rage" to Preble. Id. at 45. Preble responded that "I considered it everyday driving." Id.

**The Plaintiff's Evidentiary Objection To The Nineteenth Statement(s):**[13] See the reasons cited in his objection to the **Ninth Statement** above. Preble was not discharged because of his driving habits. See Exhibit 4 to the **Affidavit Of Walter S. Preble In Opposition To The Motion Of Transportation Display For Summary Judgment.**

20.    MacLean warned Preble not to let it happen again, telling him that he could be fired "(i)f I had another incident of road rage,....or I gave somebody the finger or some other form of communication, I guess." Id.

**The Plaintiff's Evidentiary Objection To The Twentieth Statement(s):**[14] See the reasons cited in his objection to the **Ninth Statement** above. Preble was not discharged because of his driving habits. See Exhibit 4 to the **Affidavit Of Walter S. Preble In Opposition To The Motion Of Transportation Display For Summary Judgment.**

21.    In or about February 2001, Preble was driving in the center lane of a three-lane roadway, with another truck to his left. Id. at 47. Both vehicles turned left, Preble turning from the center lane. Id.

---

13.    See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

14.    See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

10

**The Plaintiff's Response To The Twenty-First Statement(s):** The statement is admitted.

22.    After making the turn, and still driving alongside the other truck on its right, Preble realized that his lane was about to become a right-turn-only lane. He tried to pass the truck next to him, unsuccessfully, so he "hit the brakes" and pulled left behind the other truck. Id. at 48-49.

**The Plaintiff's Response To The Twenty-Second Statement(s):** The statement is admitted.

23.    In pulling behind the other truck, Preble realized from the truck's vanity plate that the truck was driven by an MBTA mechanic who lived near Preble in South Boston, although the two had never actually met. Id. at 50.

**The Plaintiff's Response To The Twenty-Third Statement(s):** The statement is admitted.

24.    Preble followed the MBTA mechanic to his home; he contends that he was planning to drive on that street in any case to avoid expressway traffic. Id. 51, 53-54.

**The Plaintiff's Response To The Twenty-Fourth Statement(s):** The statement is denied as it  misstates Mr. Preble's actual testimony, as cited.

25.    Preble and the driver of the other truck exchanged words. Preble spoke first, concerning the other driver's refusal to let him pass. Id. at 51-52. The other driver told Preble that Preble's original left turn was illegal, and gestured at Preble with a wooden club. Id. at 52-53.

11

**The Plaintiff's Response To The Twenty-Fifth Statement(s):** The statement is admitted.

26.    Preble said, "Why don't you go back to Charlestown," and drove away. <u>Id.</u> 53.

**The Plaintiff's Response To The Twenty-Sixth Statement(s):** The statement is admitted.

27.    Preble did not report the interaction with the MBTA employee to MacLean, but the MBTA employee did. <u>Id.</u> at 54.

**The Plaintiff's Response To The Twenty-Seventh Statement(s):** The statement is admitted.

28.    Preble was suspended for a week. A true and correct copy of the notice of suspension is attached to the Batten Declaration at Tab C.

**The Plaintiff's Response To The Twenty-Ninth Statement(s):** The statement is admitted.

29.    After receiving the suspension notice referred to in the prior paragraph, Preble spoke to a representative of his union, Charles Fogell, about his desire to grieve the suspension. <u>Id.</u> at 61.

**The Plaintiff's Response To The Twenty-Ninth Statement(s):** The statement is admitted.

30.    Fogell declined to grieve the suspension. Among other things, he told Preble that Preble was wrong to have been "out of his area" by driving through South Boston near his home. <u>Id.</u>, at 62-63.

12

**The Plaintiff's Response To The Thirtieth Statement(s):** The statement is denied because it selectively characterizes what the plaintiff testified that Fogell actually said to him. See also, Exhibit 6 to the **Affidavit Of Paul L. Nevins**, the **First Deposition of Walter Preble**, at page 12.

31.    Preble had already heard the same instructions about driving through South Boston from MacLean before speaking to Fogell. Id. at 61-62

**The Plaintiff's Response To The Thirty-First Statement(s):** The statement is admitted.

32.    Preble routinely drove his truck home for lunch throughout the time he was employed at TDI. Id. at 75

**The Plaintiff's Response To The Thirty-Second Statement(s):** The statement is admitted.

33.    On December 18, 2001, as he returned to work from lunch at his house, Preble struck a parked car as he turned a corner in South Boston. Id. at 76-77.

**The Plaintiff's Response To The Thirty-Third Statement(s):** The statement is admitted.

34.    Preble did not immediately realize he had hit the car, but a police officer flagged him down. Id. at 77.

**The Plaintiff's Response To The Thirty-Third Statement(s):** The statement is admitted.

35.    Preble then drove back to the MBTA garage where he had left his partner, and then returned to the TDI garage in Randolph. Id. at 78-79.

13

**The Plaintiff's Response To The Thirty-Fourth Statement(s):** The statement is admitted.

36.    Preble did not tell his partner about the accident, and told no one else that afternoon, either. Id. at 79-80. He wrote no report. <u>Id.</u> at 80.

**The Plaintiff's Evidentiary Objection To Thirty-Sixth Statement(s):**[15] Whether or not Preble told his partner about the accident is irrelevant since his partner was not his superior. Moreover, Preble has testified that he was unable to speak to Richard MacLean that afternoon  about the accident because the latter was in a meeting. **Preble [Second] Deposition**, at page 80.

37.    Preble previously had had another accident in which the truck's mirror was struck by another car, and his passenger at the time, another TDI employee, wrote a report of the incident. Id. at 81. MacLean had required Preble and others to write reports of accidents in the past. <u>Id.</u>, at 84-85

**The Plaintiff's Evidentiary Objection To The Thirty-Seventh Statement(s):**[16] See the reasons cited in his objection to the **Ninth Statement** above.

38.    On December 19, 2001, Preble reported the parked-car accident to MacLean, who told him to write up an account of it. At the end of that work day, TDI terminated Preble's employment. <u>Id.</u> at 91. MacLean said again that Preble had been off his route. <u>Id.</u> At 92-93.

---

15.    See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

16.    See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

14

**The Plaintiff's Response To The Thirty-Eighth Statement(s):** The statement is admitted.

39.   When employed at TDI, Preble suffered from Type II diabetes, which required no insulin injections but did require him to monitor his blood sugar. Id. at 12-13.

**The Plaintiff's Response To The Thirty-Ninth Statement(s):** The statement is admitted,

40.   Once per day, Preble would prick his finger, draw blood onto a test strip, and insert the strip in a small hand-held machine, a process that took "a minute." Id. at 17.

**The Plaintiff's Response To The Fortieth Statement(s):** The statement is admitted.

41.  Preble's practice was to test his blood sugar at lunch time, and then he either would eat lunch or not, depending on the reading. Id.

**The Plaintiff's Response To The Forty-First Statement(s):** The statement is admitted.

42.   Preble could have taken the blood testing machine with him to work. Id at 94-95.

**The Plaintiff's Evidentiary Objection To Forty-Second Statement(s):**[17] The evidence is speculative and therefore irrelevant under fed. R. Evid. 402 since

---

17.   See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

Preble was not "on the clock" during his lunchtime.

43.    Preble could have brought a lunch to work that would have allowed him to meet the dietary restrictions of his diabetes. Id. at 107.

**The Plaintiff's Evidentiary Objection To Forty-Third Statement(s):**[18] The evidence is speculative and therefore irrelevant under Fed. R. Evid. 402 since Preble was not "on the clock" during his lunchtime.

44.    After his termination, Preble filed a grievance through his union, the Painters and Allied Trades District Council 35. The union representative, Fogell, pursued the grievance beyond "Step I",- an initial meeting between Fogell and MacLean - top "Step II", a December 28, 2001 meeting attended by Fogell, MacLean, Preble, and Bill Murphy, id. at 111, who was a senior manager of the company based in New York and responsible for operations throughout New England, Id. at 33.

**The Plaintiff's Response To The Forty-Fourth Statement(s):** The statement is admitted.

45.    The company denied the grievance, and the union elected not to pursue it to arbitration; Fogell told Preble that the Union would not pursue the grievance because "we can't win this." Id. at 116.

**The Plaintiff's Response To The Forty-Fourth Statement(s):** The statement is admitted.

---

18.    See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

16

46.   Preble filed a claim with the Massachusetts Commission Against Discrimination on May 17, 2002, alleging discrimination on the basis of age and disability.

**The Plaintiff's Response To The Forty-Sixth Statement(s):** The statement is denied since Walter Preble also claimed unlawful retaliation. See Exhibit 1 to the **Affidavit Of Paul L. Nevins**.

47.   At no point during the grievance process did Preble tell anyone in the Union, or at TDI, that he thought he had been discriminated against. Id. at 114.

**The Plaintiff's Evidentiary Objection To Forty-Seventh Statement(s):**[19] The evidence is irrelevant under Fed. R. Evid. 402 since Preble did grieve the matter and, as the handwritten notes of Charles Fogell make clear, there was strong evidence that the reason stated for the plaintiff's discharge was a pretext. See Exhibit 7 to the **Affidavit Of Paul L. Nevins**.

48.   Preble's diabetes did not affect his ability to perform any job, nor restrict how long he could work on any particular day. Id. at 18.

**The Plaintiff's Response To The Forty-Eighth Statement(s):** The statement is denied. As a diabetic, Preble was medically required to monitor his blood-sugar levels and to decide where and what he ate during his unpaid lunch break without his employer's interference. The employer's interference - which resulted in Preble's loss of his job - did interfere with his ability to do his job.

---

19.   See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

17

**The Plaintiff's Evidentiary Objection To Forty-Eighth Statement(s):**[20] The

evidence is irrelevant under Fed. R. Evid. 402, since the issue plaintiff raises was

not whether his diabetes interfered with his ability to perform his job or the

length of his work-day but, rather, at least in part, whether his discharge

represented disparate treatment because of his practice of checking his blood-

sugar levels at home while he was on an unpaid lunch break.

49.    Asked more generally how his diabetes, "affect(ed his) daily life" while

employed at TDI, he responded, "Not too much. As long as I kept my (blood

sugar) numbers in check, I was fine." Id. at 16.

**The Plaintiff's Response To The Forty-Ninth Statement(s):** The statement is

admitted.

50.    As a result of a heart attack in 1997, Preble has been advised "not to lift

extremely, you know, heavy items," or to shovel snow, but other than that has no

restrictions on his work activities. Id. at 11-12.

**The Plaintiff's Response To The Fiftieth Statement(s):** The statement is

admitted.

51.    Preble has no reason to believe that his supervisor, MacLean, ever made

any comments about his diabetes or heart condition. Preble Dep. At 96-97.

**The Plaintiff's Evidentiary Objection To Fifty-First Statement(s):**[21] The

---

20.    See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of
Undisputed Facts.**

21.    See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of
Undisputed Facts.**

18

evidence is irrelevant under Fed. R. Evid. 402, The defendant's **Statement(s) Number Fifty-One** must be stricken because it is irrelevant to charges of discrimination based upon indirect, or circumstantial evidence. In addition, the defense of a pure heart and an empty head is not a legal defense to a charge of unlawful retaliation.

52.    When MacLean learned of Preble's condition, MacLean's response was "whenever I had to, to take it easy, take a break, or whatever I need to do to take care of my situation. Id. at 98.

**The Plaintiff's Response To The Fifty-Second Statement(s):** The statement is admitted.

53.    Preble has no reason to believe that MacLean, who older than he, had a bias against older workers. Preble Dep. at 98.

**The Plaintiff's Evidentiary Objection To Fifty-Third Statement(s):**[22] The evidence is irrelevant under Fed. R. Evid. 402, The defendant's **Statement(s) Number Fifty-Three** must be stricken because it is irrelevant to charges of discrimination based upon indirect, or circumstantial evidence. In addition, the defense of a pure heart and an empty head is not a legal defense to a charge of unlawful retaliation.

54.    Preble is unaware of any other employee with a driving record comparable to his who was treated more favorably. Cf. Preble Dep. at 100.

---

22.    See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

19

**The Plaintiff's Evidentiary Objection To Fifty-Fourth Statement(s):**[23] The

evidence is irrelevant under Fed. R. Evid. 402, The defendant's **Statement(s)**

**Number Fifty-Four** must be stricken because, although Preble may have been

unaware of other employees with driving records comparable to his who were

treated more favorably, the defendant however, does know of other similarly-

situated employees who have been treated more favorably. As such, this

statement is calculated to mislead the Court. See Exhibit 5 to the **Affidavit of**

**Walter S. Preble** which shows that Walter Preble has a flawless driving record

according to the Massachusetts Registry of Motor Vehicles. By contrast, see

Exhibits 1, 2 and 3 to the **Supplementary Affidavit Of Paul L. Nevins** which

show that employees, Brian Carson. Kenneth Barrus and Thomas Higgins had

been involved in "at fault" motor vehicle accidents for which they received only

written warnings, not suspensions without pay or discharges from employment.

    **Additional material facts:**

    The plaintiff submits that the additional facts listed below, many of which

the defendant disputes, are material and preclude the entry of summary

judgment to the defendant:

55.    At the time he commenced this action, the plaintiff was a 48 year old male

who suffered from diabetes and a heart condition. **Verified Complaint**, at ¶ 1.

---

23.    See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of**
**Undisputed Facts.**

20

56.   The plaintiff worked for Transportation Displays and its predecessors-in-interest since June 16, 1977. **Verified Complaint**, at ¶ 7.

57.   As of December 12, 2001, the plaintiff was the second most senior union employee at the company's Randolph office. **Verified Complaint**, at ¶ 9.

58.   The plaintiff was also the third oldest union employee. See the **Affidavit Of Walter S. Preble in Opposition To The Motion Of Transportation Displays For Summary Judgment**, at ¶ 5, and Exhibit 4 to the **Affidavit of Paul L. Nevins.**

59.   After Transportation Displays acquired the business in 2000, it hired seven new employees who performed the same work as the plaintiff. See the **Affidavit Of Walter S. Preble in Opposition To The Motion Of Transportation Displays For Summary Judgment,** at ¶ 6 and Exhibit 1 thereto.

60.   All but one of these employees were substantially younger than Preble; five of them were under forty years of age. See **The Affidavit Of Walter S. Preble in Opposition To The Motion Of Transportation Displays For Summary Judgment,** at ¶ 7 and Exhibit 1 thereto.

61.   The plaintiff was discharged from employment for unauthorized use of a company vehicle by his employer, and not for any other reason. See Exhibit 4 attached to **The Affidavit Of Walter S. Preble in Opposition To The Motion Of Transportation Displays For Summary Judgment.**

62.   Transportation Displays did not have any written policies or procedures, nor had it negotiated any work rules with the union, which forbade the plaintiff from using the van to get lunch. See Exhibit 5 to the **Affidavit Of Paul L. Nevins,**

the **Deposition of Richard MacLean**, at pages 18-19; see also Exhibit 2 to **The Affidavit Of Walter S. Preble in Opposition To The Motion Of Transportation Displays For Summary Judgment.**

63.     The collective bargaining agreement between TDI and the union required that employees receive progressive discipline and placed the burden upon the company to prove just cause for the imposition of any discipline. See Exhibit 2 to **The Affidavit Of Walter S. Preble in Opposition To The Motion Of Transportation Displays For Summary Judgment.**

64. Section 8.3 of the Collective Bargaining Agreement provides that "..no employee shall be suspended, discharged or otherwise disciplined without just cause."[24]

64.    Richard MacLean testified that, as the operations manager for Transportation Displays, he utilized progressive discipline in his treatment of employees. See Exhibit 5 to the **Affidavit Of Paul L. Nevins**, the **Deposition of Richard MacLean**, at pages 18-21.

65.     At the time of the plaintiff's discharge from employment, he had never received a written warning for any offense from his employer; but he had, nonetheless, been suspended for one week on February 1, 2001 because of an alleged incident of "road rage."

66.     Four other younger employees who were neither handicapped, nor regarded as handicapped, Blake Beath, Hak Ok, John Benoit and David Young,

---

24.    Exhibit 3 to **Affidavit of Paul L. Nevins**.

22

committed more serious offenses than the plaintiff; three of these employees violated explicit, negotiated work rules. See Exhibits 8, 9, 10. and 11 to the **Affidavit Of Paul L. Nevins.**

67.    Each of these four younger, non-handicapped employees were treated more favorably than the plaintiff. See Exhibits 8, 9, 10. and 11 to the **Affidavit Of Paul L. Nevins.**

Respectfully submitted,

WALTER S. PREBLE

By his attorney,

Paul L. Nevins
BBO # 369930
47 Church Street
Wellesley, MA 02482
(781) 237-9018

23

## Certificate of Service

The undersigned hereby certifies that, on November 24, 2004, he served a true copy of the foregoing upon all parties by causing it to be sent electronically and, via first class mail, postage prepaid, to:

Michael A. Feinberg, Esquire
Jonathan M. Conti, Esquire
**Feinberg, Campbell & Zack, P.C.**
177 Milk Street
Boston, MA 02109

and:

Mark W. Batten, Esquire
**Proskauer Rose LLP**
One International Place
Boston, MA 02110

Paul L. Nevins