## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WALTER S. PREBLE,<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>TRANSPORTATION DISPLAYS, INC.,<br>d/b/a VIACOM OUTDOOR, and<br>PAINTERS AND ALLIED TRADES<br>DISTRICT COUNCIL 35, IUPAT,<br>AFL-CIO,<br><br>　　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)　Civil Action No. 04-11005-RWZ<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## REPLY BRIEF IN SUPPORT OF DEFENDANT TRANSPORTATION DISPLAYS, INC.'S MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

Nearly all of plaintiff Walter Preble's opposition brief is occupied with general bromides about the legal standards applicable to summary judgment motions and discrimination cases. Precious little of his argument addresses the evidence in this particular case. As shown below, what little evidence he does proffer fails even to come close to creating a genuine issue of fact for trial.

Preble answers most of defendant Transportation Displays, Inc.'s ("TDI") argument, in fact, with silence. He does not rebut or even acknowledge TDI's argument that he suffers from no qualifying impairment, and so has no claim for disability discrimination; nor that he lacks any direct evidence of discrimination. Instead he attempts to show that younger employees were treated more favorably than he. But Preble cannot point to a single employee with a similarly lengthy record of disciplinary problems, and the evidence he submits shows that TDI applied a consistent progressive discipline system to

6880/76665-002  BNLIB1/8205v1

all employees' infractions. In many of the cases to which Preble now points, the younger employees were disciplined more severely for their first and second offenses than was Preble. There is no evidence on which a reasonable jury could rest a verdict for the plaintiff, and TDI accordingly is entitled to summary judgment.

## ARGUMENT

As a preliminary matter, Preble briefly argues that federal cases do not apply because his claims are brought under Massachusetts law, which he suggests is more favorable to him. Preble Opp. at 7-8 & n.13. In fact, for all relevant purposes here, the law is the same. See, e.g., Dube v. Middlesex Corp., 59 Mass. App. Ct. 734, 737 (2003) (adopting federal test concerning definition of "handicapped" employee); Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 129-30 (1997) (adopting federal test concerning "similarly situated" employees).

The cases diverging from federal precedent that Preble cites are irrelevant to the issues presented in this case. In Dahill v. Police Dept. of Boston, 434 Mass. 233 (2001), cited in Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp.") at 7 n.13, the Supreme Judicial Court held that, unlike under the federal Americans with Disabilities Act, mitigating measures need not be taken into account in determining whether an employee is a "qualified handicapped person." Id. at 240-42. But there is no question of mitigating measures in this case. Under the law that governs the issues actually presented, Preble cannot prevail.

A. **Plaintiff Has No Evidence Sufficient To Create A Genuine Issue Of Material Fact On His Discrimination Claims.**

1. **Plaintiff Offers No Relevant Comparison To Any Similarly Situated Employee.**

Plaintiff argues first that he was treated less favorably than several younger employees. Such comparisons are only relevant under Massachusetts law, as under federal law, if the plaintiff and the comparators are "similarly situated in all relevant aspects," which requires that they be similar "in terms of performance, qualifications and conduct, without such differentiating or mitigating circumstances that would distinguish their situations." Matthews, 426 Mass. at 129-30 (internal quotations omitted) (quoting Smith v. Stratus Computer, Inc., 40 F.3d 11, 17 (1st Cir. 1994), cert. denied, 514 U.S. 1108 (1995)).

Preble offers no such apples-to-apples comparisons here. To the contrary, his evidence reveals employees moving along the same path of progressive discipline that he experienced, and that in Preble's case eventually led to his termination because of his refusal to comply with instructions and warnings from his manager. Preble's record was lengthy: two offenses (a driving accident and locking his keys in the truck) for which he received no discipline; an oral warning; a suspension; and finally termination. Preble does not offer evidence that any other employee had similarly repetitive problems, much less that a similarly misbehaving employee was treated more generously. Blake Beath was suspended for five days for an apparent first offense. See Nevins Decl. Ex. 8. Hak Ok received an oral warning for his first offense and lost a day's pay, Nevins Decl. Ex. 9. John Benoit received a written warning for his second offense, Nevins Decl. Ex. 10. And David Long, after receiving a

written warning for a first offense, failed to amend his conduct and was suspended. Nevins Decl. Ex. 11.

None of these employees was let off without even an oral warning for two offenses, as Preble was. Further, three of the four – Beath, Ok, and Benoit – expressed remorse and determination to improve. By contrast, Preble's response to the instruction not to go home for lunch was to tell his supervisor, MacLean, that MacLean had no business telling him where to go for lunch, Preble Deposition at 95, and to follow up a warning about "road rage," id. at 45, by having another altercation with a driver, id. at 47-54.[1]

Nor does plaintiff benefit from the driving records submitted with the Supplementary Affidavit of Paul Nevins – offered without any comment or argument in Preble's opposition brief. The exhibits reveal minor accidents: two backing into an obstacle, a third damaging a tire. They are comparable to Preble's own accidents when he struck an overhead door and later a parked car, though none of these employees seems to have had multiple accidents, as Preble did. Preble Dep. at 31-32. But while Preble was not disciplined at all as a result of his first accident, each of these employees was required to attend driver retraining courses on his own time, and one, Brian Carson, was given an oral warning that any further accident would result in suspension. See Nevins Supp. Aff. Ex. 1-3. In other words, each of these three employees was treated

---

[1] Preble also offers no comparison with any employee who committed the same offenses as he did. Beath failed to complete his work one evening; the others were disciplined for failing to show up for work. Preble's misbehavior related to several traffic accidents, "road rage," and repeatedly driving home for lunch despite contrary instructions. Even if there had been a difference in the disciplinary approach, which there was not, the evidence plaintiff offers does not permit the Court to make a comparison because the offenses were significantly different.

4

less favorably than Preble with respect to the first accident. The records contribute nothing to Preble's claim.

### 2.     Plaintiff Was Not Entitled To Any Accommodation.

Preble appears briefly to contend that he was <u>entitled</u> to eat lunch at home as a "reasonable accommodation" of his diabetes. Preble Opp. at 9 & n.16, 13. But an employee is not entitled to an "accommodation" unless there is something to accommodate. Specifically, accommodations are intended to permit an employee to work despite an impairment that "substantially limits one or more major life activities." Mass. Gen. L. c. 151B, §1(17).

As shown in TDI's opening brief, Part A, Preble did not suffer from such an impairment. He required no accommodation in order to perform the essential functions of his position, as he frankly admitted. Preble Dep. at 16-18. "The issue of reasonable accommodation 'is only considered when a handicapped person is not able to perform the essential functions of the job,'" and since Preble had no such need, TDI had no obligation to excuse him from the lunch rule. <u>Petsch-Schmid</u> v. <u>Boston-Edison Co.</u>, 914 F. Supp. 697, 703 (D. Mass. 1996) (quoting <u>Tate</u> v. <u>Dept. of Mental Health</u>, 419 Mass. 356, 362 (1995)), <u>aff'd</u>, 108 F.3d 328 (1st Cir. 1997).

Further, Preble never <u>asked</u> for an accommodation of any kind; he never suggested, for example, that he had a medical need to eat lunch at home. There is no reason to believe that TDI would have refused to grant any needed adjustments; the only evidence on the point is that when Preble told his supervisor that he had a heart condition and diabetes, his supervisor responded that he should "take it easy whenever [he] needed to." Preble Affidavit ¶9.

Nor did TDI have any other reason to believe that an accommodation was necessary; nothing in Preble's performance alerted TDI that his heart condition or diabetes was interfering with his ability to perform the essential functions of his position. An employer cannot be required to accommodate a need that it does not know exists. See, e.g., Conway v. Boston Edison Co., 745 F. Supp. 773, 783 (D. Mass. 1990). And TDI here did not know of the need because, again, there was none. Preble Dep. at 16-18.

### 3. Plaintiff's Reference To Written Work Rules Is A Red Herring.

Preble next argues that because four work rules were negotiated with his union and appended to the collective bargaining agreement – concerning tardiness, absenteeism, and use of alcohol or drugs – TDI's discipline of Preble for driving home at lunchtime must be suspect. Preble Opp. at 11-12. Leaving aside that Preble was not terminated solely for his practice of driving home for lunch, the fact that the no-lunch-at-home rule was never reduced to writing is not at all probative of an illicit motive.

The exhibit to the collective bargaining agreement to which Preble refers says explicitly, in fact, that "[t]hese rules are not intended to cover every circumstance under which discipline, up to and including discharge, may be appropriate." In all other cases, the exhibit says, TDI merely bears the burden of demonstrating just cause for discipline if the union should complain. In other words, the list of work rules in the collective bargaining agreement is not exclusive.[2]

---

[2] The caveat hardly seems necessary. Under Preble's implausible interpretation of the document, employees who fight, or steal from the company, or intentionally destroy company property would not be subject to discipline, because none of those

The distinction might nevertheless be relevant if there were some question about whether the employees were on notice of the no-lunch-at-home rule, but there is not. Preble admitted that he had been instructed not to go home for lunch but that he did so anyway, in defiance of MacLean's authority, believing (and even telling MacLean) that MacLean had no business telling him where to eat lunch. Preble Dep. at 94-95; see also id. at 30 (MacLean told the employees several times not to drive company trucks off route).

Nor is there any question of selective enforcement; Preble offers no evidence that the no-lunch-at-home rule was enforced more strictly against him than any other employee, or that it was otherwise imposed arbitrarily because it was oral rather than written.

As a matter of law it is not sufficient for Preble to say, as he does, that because the rule was not in writing, a jury might find TDI's explanation of the termination not to be credible. Preble Opp. at 12. As noted in TDI's opening brief, plaintiff's burden is greater than that; he must make "a substantial showing" that the reasons TDI has given for his termination are false, not merely argue that because a rule was unwritten, a jury might find the explanation suspicious. Williams v. Raytheon Co., 220 F.3d 16, 19 (1st Cir. 2000); see also Shorette, 155 F.3d at 13 (plaintiff "must do more than cast doubt on the rationale proffered by the employer; the 'evidence must be of such strength and quality as to permit a reasonable finding that the . . . [termination] was *obviously or manifestly unsupported*'") (quoting Ruiz v. Posadas de San Juan Assocs., 124 F.3d 243, 248 (1st Cir. 1997)) (original

---

basic rules is set out in writing.

emphasis). Preble has nothing close to that sort of evidence, and the Court should grant TDI's motion for summary judgment.

### B. Plaintiff Cannot Prevail On His Retaliation Claim.

Unable to state a true retaliation claim – that is, a claim of adverse action motivated by a claim or complaint of discrimination – Preble argues instead that he was engaged in "protected activity" by eating lunch at home each day, and that TDI's termination of him for that behavior was "retaliatory." The claim fails for two reasons.

First, Preble's practice of defying his manager's instruction not to eat lunch at home was not "protected activity" under Mass. Gen. L. c. 151B because, as explained above and in Part A of TDI's opening brief, Preble was not a "qualified handicapped person" within the meaning of the statute. Separately, there is no evidence that eating lunch at home was medically necessary, and in fact Preble admitted that it was not: he could have brought the handheld blood-testing machine with him to work, and could have brought a bag lunch with him as well. Preble Dep. at 94-95, 107. For both reasons, Preble's insubordination was not "protected activity."

Second, Preble's characterization does not state a separate claim of retaliation under Mass. Gen. L. c. 151B, §4(4A); it is merely a reformulation of his discrimination claim. In both he alleges that he was unlawfully terminated because of a disability, or because of behavior that the disability required of him. If that were sufficient, then every discrimination claim would of necessity also state a claim for unlawful retaliation. Preble cites no authority for that novel proposition, and we are aware of none. To be sure, a <u>request</u> for accommodation constitutes protected activity, and adverse action against an

8

employee for such a request might state a claim. <u>See, e.g.</u>, <u>Wright</u> v. <u>CompUSA, Inc.</u>, 352 F.3d 472 (2003). But Preble never requested an accommodation of his alleged disability. There is no separate retaliation claim here, and TDI is entitled to summary judgment on Count 4 of the Complaint.

## CONCLUSION

For all of the foregoing reasons, defendant TDI's motion for summary judgment should be granted.

Respectfully submitted,

TRANSPORTATION DISPLAYS, INC.

By its attorneys,

/s/ Mark W. Batten_____
Mark W. Batten, BBO #566211
PROSKAUER ROSE LLP
One International Place, 14th Floor
Boston, MA 02110
(617) 526-9850

Dated: December 1, 2004

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record, either through the electronic filing process or by first-class mail, postage prepaid, this 1st day of December, 2004.

/s/Mark W. Batten_____
Mark W. Batten

6880/76665-002 BNLIB1/8205v1