UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WALTER S. PREBLE,<br><br>　　　　Plaintiff,<br><br>v.<br><br>TRANSPORTATION DISPLAYS,<br>INCORPORATED, dba<br>VIACOM OUTDOOR, and<br>PAINTERS AND ALLIED<br>TRADES DISTRICT COUNCIL 35,<br>IUPAT, AFL-CIO,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　　　C.A. No. 04-cv-11005 RWZ |

**MEMORANDUM IN SUPPORT OF DEFENDANT
PAINTERS AND ALLIED TRADES DISTRICT COUNCIL NO. 35'S
MOTION FOR SUMMARY JUDGMENT**

Defendant Painters and Allied Trades District Council No. 35 hereby requests that the Court grant its Motion for Summary Judgment against Plaintiff Walter S. Preble because Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and/or the federal duty of fair representation pursuant to Section 9(a) of the National Labor Relations Act, 29 U.S.C. §159(a), preempt Plaintiff's state law discrimination claims.

In either case, the Plaintiff's claims are federally preempted and are therefore barred by the six-month statute of limitations that applies to both Section 301 "hybrid" actions and to breach of the duty of fair representation claims under the National Labor Relations Act. In any event, Plaintiff cannot present any evidence to establish that the Union violated its duty of fair representation or any Massachusetts law against discrimination.

I.    Summary of Undisputed Material Facts.

Defendant Painters and Allied Trades District Council No. 35 ("District Council" or "Union") relies on the Statement of Undisputed Material Facts attached hereto in support of its Motion for Summary Judgment. Plaintiff briefly recounts those facts here.

The Union represents employees at Transportation Displays Incorporated, d/b/a Viacom Outdoor ("TDI" or "Company") whose primary responsibility is to install outdoor advertising. Plaintiff Walter Preble was an employee of TDI and a member of the bargaining unit represented by the District Council as of December 11, 2001.

On December 11, 2001, Mr. Preble was involved in an automobile accident while driving a company vehicle. Mr. Preble was returning from his home, which was located off his route. On December 12, 2001, TDI terminated Mr. Preble for "the unauthorized use of a company vehicle." Mr. Preble had previously been suspended for an incident of road rage, and had been warned on several occasions that he was not to go off his route or take his TDI vehicle home for lunch.

On December 13, 2001, Mr. Fogell, the Union's Business Representative for Mr. Preble's bargaining unit, met with Mr. Preble at the Union hall, and filed a grievance pursuant to Article 9, Section 9.2 of the collective bargaining agreement concerning Mr. Preble's discharge. On December 19, 2001, Mr. Fogell attended a Step One grievance on Mr. Preble's behalf. On December 26, 2001, Mr. Fogell advanced Mr. Preble's grievance to Step 2 of the grievance process. On December 28, 2004, following a Step 2 grievance meeting attended by Mr. Preble and Mr. Fogell, TDI again denied the grievance.

After reviewing Mr. Preble's disciplinary history, the events of December 11, 2001, what transpired at the two grievance meetings, notes from his own investigatory interviews with other bargaining unit employees, and consulting with the Union's legal counsel, Mr. Fogell determined that the Union would not be successful at arbitration, and therefore decided not to pursue the grievance any further.

In a letter dated January 2, 2002, Mr. Fogell informed Mr. Preble that the Union had decided not to pursue his grievance any further "due to lack of merit as disclosed at the grievance meetings." District Council Business Manager/Secretary Treasurer Ralph Harriman, in a letter dated February 12, 2002, notified Mr. Preble that pursuant to Mr. Preble's request, he had reviewed the information pertaining to his grievance, and had reaffirmed Mr. Fogell's decision not to pursue the grievance any further. Mr. Preble received both letters shortly after they were mailed.

II.    Argument.

A.    Summary Judgment Standard.

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Rule 56(c) provides for the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Perez De La Cruz v. Crowley Towing and Transportation Co.*, 807 F.2d 1084, 1086 (1st Cir. 1986), *cert. denied*, 487 U.S. 1050 (1987).

3

Material facts are those that have the potential to affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). The existence of a factual dispute will not necessarily defeat a summary judgment motion. "[T]he requirement is that there must be a *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

B.    Plaintiff's State Law Discrimination Claims Are Preempted by the Labor Management Relations Act.

The Plaintiff alleges that the Union violated Massachusetts General Laws prohibiting age discrimination, disability discrimination and unlawful retaliation for exercise of statutory rights under M.G.L. c. 151B, and that Defendant TDI discriminated against him on the basis of his age and alleged disability when it terminated his employment on December 12, 2001.

Section 301 of the Labor Management Relations Act allows a "suit for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). Thus, "state law claims implicating rights and duties under a [collective bargaining agreement] may be preempted by § 301." *Fant v. New England Power Service Co.*, 239 F.3d 8, 14 (1st Cir. 2001).

The controlling question in Section 301 suits is "'whether a state law action is based, in its essence, on a claim of rights or duties under a collective bargaining agreement.'" *Id.*, quoting The Developing Labor Law, 1699 (Patrick Hardin et al. eds., 3d ed. 1992). Employers are obligated to comply with the terms of the collective bargaining agreement, while unions have a corresponding duty of fair representation, "meaning that they must not engage in 'arbitrary or bad faith conduct' that evidences 'hostility,

4

discrimination, or dishonesty' toward an employee-union member." *Id.*, quoting *Figueroa de Arroyo v. Sindicato de Trabajadores Packinghouse*, 425 F.2d 281, 284 (1st Cir. 1970). These so-called "hybrid" claims "involve alleged wrongdoing on the part of both the employer and the union with respect to the rights of employees." *Id.* at 17. The court must therefore determine whether the union failed to fairly represent the employee and whether the employer violated the terms of the collective bargaining agreement. *Id.*

Generally, "if the resolution of a state law claim depends upon the meaning of a collective bargaining agreement, the application of state law . . . is preempted and federal labor law principles – necessarily uniform throughout the nation – must be employed to resolve the dispute." *Lingle v. Norge Div. Of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988). However, Section 301 cannot be broadly read to preempt nonnegotiable rights conferred on individual employees as a matter of state law. *Lavidas v. Bradshaw*, 512 U.S. 107, 123 (1994). The state law remedy must be "independent" of the collective bargaining agreement, such that "resolution of the state law claim does not require construing the collective bargaining agreement" to avoid preemption. *Lingle*, at 407.

Even where there is an independent statutory basis for an employee's claim, the "requires construing" test commands the Court to determine whether resolution of the age and disability discrimination claims under Chapter 151B require an interpretation of the collective bargaining agreement. *Larosa v. United Parcel Service, Inc.*, 23 F. Supp. 2d 136 (D. Mass. 1998) (claim not preempted).

Here, Preble's claim is based entirely upon the collective bargaining agreement. Preble alleges that he was terminated from his employment, and that the District Council

refused to process his grievance to arbitration. Article 8, Section 8.3 of the collective bargaining agreement provides that discharge must be for just cause:

> Except as provided in Section 5.2 hereof relating to trainees, no employees shall be suspended, discharged or otherwise disciplined without just cause. The propriety of the disciplinary action taken by the company may be the subject of grievance and/or arbitration in accordance with Section 9.2 hereof . . .

In addition, Preble's charge against the Union is that it failed to process his discharge grievance to arbitration. Article 9, Section 9.2 of the collective bargaining agreement provides the proper steps for pursuing a grievance. Lastly, Article 18 prohibits discrimination by the Company *and the Union*:

> Neither the union nor the company shall discriminate against any employee or applicant for employment because of race, color, creed, age, gender, place of national origin, sexual preference, veteran status, or disability, provided in the case of disability, the disability does not impair the employee's or applicant's ability to perform the essential job functions of his/her job.

Thus, even if Preble is found to have alleged a colorable claim under M.G.L. c. 151B, Section 301 of the LMRA preempts the claim because it would require a court to construe the terms of the collective bargaining agreement. *Lingle, supra.*

In *Wilhelm v. Sunrise Northeast, Inc.*, 923 F. Supp. 330 (D. Conn. 1995), the Court found the employee's state law claim alleging discrimination by the union on the basis of sexual orientation to be preempted by Section 301 of the LMRA where the collective bargaining agreement in question included a "just cause" for discharge provision and a grievance and arbitration procedure. *Id.* at 335. Where a state law creates no new rights for the union member and imposes no new duty on the union not already present under federal labor law, Section 301 preempts the claim. *Id.* at 337.

More recently, in *Fant v. New England Power Service Co.*, 239 F.3d 8 (1st Cir. 2001), the First Circuit held that the plaintiff's complaint alleging discrimination by his

employer and union based upon a speech impediment was federally preempted. In finding that Fant's state law-based claims were preempted by Section 301, the Court noted that in addition to provisions pertaining to layoff and rehire, the plaintiff's claim of failed representation by the union was governed by the agreement, which stated: "upon the written request of the [union] . . . the Company shall grant a hearing to the [suspended or discharged] employee . . . The hearing shall be conducted in accordance with the method of adjusting grievances as provided in Article VIII [of the agreement]." *Id.* at 15-16. The agreement also contained a provision that provided that while the company had the right to assign work, direct the workforce, and discipline and discharge for just cause, it "would not discriminate against any member of the [union]." *Id.* at 16.

Here, there is a just cause provision, a grievance and arbitration article, and a section prohibiting discrimination by both the Employer and the Union. The Union's alleged wrongdoing, according to the Plaintiff, is that it did not take his discharge grievance to arbitration based upon his age and alleged disability. The issues are therefore whether the Company had just cause to discharge the Plaintiff, and whether the Union's decision not to pursue the Plaintiff's grievance to arbitration was discriminatory. These questions require the interpretation of the collective bargaining agreement, and therefore state law creates no new duties of the Union not already required under federal law. Thus, Preble's state-law based discrimination claims are preempted by Section 301.

C.    Plaintiff's State Law Discrimination Claims are Preempted by the Union's Duty of Fair Representation Under the National Labor Relations Act.

Assuming, *arguendo*, that the Plaintiff's claims are not preempted by Section 301 of the Labor Management Relations Act, they are still federally preempted by the duty of fair representation derived from Sections 9(a) and 8(b) of the National Labor Relations Act, 29 U.S.C. § 159(a) and § 158(b).

Federal preemption of state law claims may occur by "operation of the so-called duty of fair representation (DFR). A union acting in its representative capacity owes this duty to those on whose behalf it acts." *BIW Deceived v. Local S6, Industrial Union of Marine and Shipbuilding Workers of America*, 132 F.3d 824, 830 (1st Cir. 1997).

As noted above, the Plaintiff's claims against the Union focus entirely on the Union's actions in representing the Plaintiff following his discharge from employment on December 12, 2001. The Plaintiff describes the critical allegations of his Complaint against the Union, as follows:

32. The union's Business Agent did not prepare the plaintiff for the grievance procedure and failed to present any defense on his behalf.

33. Essentially, the plaintiff was treated by the company and by his union as 'dead wood.'

34. Thereafter, the union refused to take the plaintiff's grievance to arbitration.

Clearly, the Plaintiff has alleged that the Union discriminated against him in the manner in which it handled his discharge grievance. When a union has the sole power to invoke the grievance procedure and prevents an employee from exhausting his contractual remedies by refusing to process a grievance, the union's decision must be "arbitrary, discriminatory, or in bad faith" to constitute a breach of its duty of fair representation. *Mensah v. Newton Buying Corp.*, 927 F. Supp. 518, 522 (D.Mass. 1996),

*quoting Vaca v. Sipes*, 386 U.S. 171, 190 (1967). The duty of fair representation is implied from the union's exclusive power to represent all employees in the union pursuant to Section 9(a) of the National Labor Relations Act. *Mensah*, 927 F. Supp. at 521, n.3. A breach of this duty constitutes an unfair labor practice under § 8(b) of the Labor Management Relations Act, 29 U.S.C. §158(b).

The Union's duty of fair representation substantively preempts the Plaintiff's discrimination charges under Massachusetts General Laws Ch. 151B. "It is well established that as the exclusive bargaining representative pursuant to §9 [of the National Labor Relations Act], a union has a statutory duty to fairly represent its members without favoritism, prejudice, or other discrimination." *Lemerich v. Int'l Union of Operating Engineers, Locals 877 and 4*, 2002 U.S. Dist. LEXIS 7102 (D. Me.) (April 19, 2002) at [*19]. Consequently, as federal law governs a duty of fair representation claim, if a state law claim invokes rights derived from a union's duty of fair representation, then the state law claim is preempted:

> If the underlying substance of the [state law] claim for sexual discrimination is that the union breached the duty of fair representation by discriminating against plaintiff, the [state law discrimination] claim creates no new rights and is subsumed and preempted by the NLRA's duty of fair representation. *Id.*

Furthermore, "in determining whether a state law claim raises any rights separate from the duty of fair representation, courts focus on the conduct at the root of the controversy, not the plaintiff's characterization of the conduct in the complaint." *Id.* at [*21]. Here, the underlying substance of the Plaintiff's claims for age and disability discrimination is that the Union breached its duty of fair representation by refusing to process his discharge grievance to arbitration. The state-law claims therefore create no new rights for the Plaintiff and impose no duty on the Union not already present under its

federal duty of fair representation. Thus, the state claims are preempted. See: *Bergeron v. Henderson*, 52 F.Supp. 2d 149, 153 (D.Me. 1999) (State law-based claims for sex discrimination and harassment preempted by the National Labor Relations Act ).

Numerous courts have followed the same reasoning in finding state law-based claims to be preempted pursuant to the union's federal duty of fair representation.  In *Thomas v. National Association of Letter Carriers*, 225 F.3d 1149 (10th Cir. 2000), the plaintiff filed suit against the Postal Service and the union in state court following his termination from employment, alleging wrongful discharge and civil conspiracy.  The union would not support any of the plaintiff's suggested religious accommodations that would have excused him from having to work Saturdays because it believed such accommodations would violate the collective bargaining agreement. *Id.* at 1153.  The Tenth Circuit held that the plaintiff's state law claims for wrongful discharge and civil conspiracy amounted to a claim for the breach of the duty of fair representation:

> Although [the plaintiff] framed his state law claims under state wrongful discharge and civil conspiracy theories, those claims against [the union] actually amount to a claim for breach of the duty of fair representation. [The plaintiff]'s wrongful discharge and civil conspiracy claims against [the union] are premised on the notion that [the union] wrongfully agreed with the Postal Service to discharge [the plaintiff] because of his religious beliefs, and that the discharge was in violation of Kansas public policy protecting the free exercise of religion. *Id.* at 1158, quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967).

Similarly, in *Snay v. U.S. Postal Service*, 31 F. Supp.2d 92 (N.D.N.Y. 1998), the plaintiff sued her employer for breach of the collective bargaining agreement, violation of the Family and Medical Leave Act, and discrimination on the basis of gender and disability under state law, as well as the union for breach of the duty of fair representation and for disability and gender discrimination under state law in connection with her discharge for absences she claimed should have been covered by the Family and Medical

Leave Act. *Id.* at 94. The plaintiff's complaint alleged that the union failed to "fully process" her grievances and "mislead and deceived [the] plaintiff regarding the processing of her grievances," and that but for her gender and disability, she would have been represented by the union in the "processing of her FMLA and disciplinary grievances in a fair and honest manner." *Id.* at 99. The court held the state discrimination claims to be preempted by the duty of fair representation derived from sections 8(b) and 9(a) of the NLRA:

> Thus, the substance of her discrimination claim is that the Union breached their [sic] duty of fair representation by discriminating against her. Because the alleged discrimination was in connection with the Union's activities as representative, the discrimination claim cannot be said to arise wholly outside the ambit of these obligations circumscribed by a union's duty of fair representation under the collective bargaining agreement. *Id.* at 99-100.

See also: *Cahoon v. International Brotherhood of Electrical Workers Local 261*, 175 F. Supp.2d 220 (D.Conn. 2001) (Plaintiff's negligence claims against the union substantively preempted by the federal duty of fair representation); *Rodolico v. Unisys Corporation*, 96 F. Supp.2d 184 (E.D.N.Y. 2000) (allegation of union's violation of New York Human Rights Law could not be said to create a new right separate from the union's duty of fair representation, and was therefore "subsumed by the duty of fair representation."); *Madison v. Motion Picture Set Painters and Sign Writers Local 729*, 132 F. Supp.2d 1244 (C.D.Cal. 2000) (claim regarding union's failure to negotiate non-discriminatory hiring procedures preempted by the duty of fair representation rooted in the National Labor Relations Act).

Thus, because the Plaintiff's state law discrimination claims are poorly disguised charges that the Union violated its duty of fair representation in the processing of his grievance, they are federally preempted.

D.    Plaintiff's Claims Against the Union Are Barred by the Six-Month Statute of Limitations.

As noted above, Plaintiff's claims amount to a hybrid action under Section 301 of the Labor Management Relations Act, or, in the alternative, an allegation that the Union breached its federal duty of fair representation under the National Labor Relations Act. More than twenty years ago, the United States Supreme Court held that the statute of limitations for a "hybrid" cause of action under Section 301 is six months. *Delcostello v. Int'l Brotherhood of Teamsters,* 462 U.S. 151, 169 (1983). Similarly, the statute of limitations for a duty of fair representation claim under the National Labor Relations Act is also six-months. *Madison v. Motion Picture Set Painters and Sign Writers Local 729,* 132 F.Supp.2d 1244, 1260 (C.D.Ca. 2000); *Cantrell v. International Brotherhood of Electrical Workers, Local 2021,* 32 F.3d 465, 467 (10th Cir. 1994) ("Uniformity and predictability suggest all unfair representation claims should be governed by the same statute of limitations").

The six-month statute of limitations in fair representation claims begins to run when "the challenged conduct comes to light," i.e., "when the plaintiff knows, or reasonably should know, of the acts constituting the union's alleged wrongdoing." *Arriaga-Zayas v. International Ladies' Garment Workers' Union,* 835 F.2d 11, 13 (1st Cir. 1987), *cert. den.,* 485 U.S. 1033 (1988), quoting *Graham v. Bay State Gas Co.,* 779 F.2d 93, 94 (1st Cir. 1985).

Union Business Representative Charles Fogell informed Mr. Preble in a letter dated January 2, 2002, that the Union had decided not to pursue his grievance any further "due to lack of merit as disclosed at the grievance meetings," and Union Business Manager/Secretary- Treasurer Ralph Harriman notified Mr. Preble via a letter dated

February 12, 2002, that he had reviewed the information pertaining to his grievance, and had reaffirmed Mr. Fogell's decision not to pursue the grievance any further:

> . . . Therefore, we must inform you that the case will not proceed to arbitration due to lack of merit as previously stated.

Mr. Preble admitted that he received Mr. Harriman's letter shortly after February 12, 2002.

Thus, that at the very latest, the Plaintiff became aware on or about February 12, 2002, that the Union would not be taking his claim to arbitration.   The Plaintiff's Complaint was filed with Suffolk Superior Court on or about April 7, 2004, *more than two years after the Plaintiff was finally advised by the Union that it would not pursue his grievance to arbitration.*[1]

### E.   The Union Did Not Breach its Duty of Fair Representation.

Even assuming, *arguendo*, that Plaintiff's claim is not barred by the six-month statute of limitations, it is clear that the Plaintiff cannot establish that the Union breached this duty when it refused to process his grievance to arbitration.  As noted, *infra*, a union breaches its duty of fair representation "only when [its] conduct toward a member of the collective bargaining agreement is arbitrary, discriminatory, or in bad faith." *Miller v. United States Postal Service*, 985 F.2d 9, 11 (1st Cir. 1993), quoting *Vaca v. Sipes*, 386

---

[1]    Plaintiff did not file a charge with the National Labor Relations Board prior to filing suit in Suffolk Superior Court.  Rather, Plaintiff chose to file a claim with the Massachusetts Commission Against Discrimination (MCAD).  The filing of a charge with the MCAD does not toll the six-month statute of limitations for § 301 or duty of fair representation claims. *Johnson v. Artim Transp. Sys., Inc.*, 826 F.2d 538, 551 (7th Cir. 1987); *Ninham v. Nicolet Paper Co.*, 583 F.Supp. 1057, 1059 (E.D. Wis. 1984) ("Plaintiff's pursuit of her discrimination claim before the EEOC does not affect the running of the statute of limitations under 29 U.S.C. §160(b)."); *Youngblood v. Potter*, 262 F. Supp.2d 1309, 1316 (N.D. Ala. 2003) ("Plaintiff's pursuit of the statutory prerequisites for filing a Title VII claim against the Postal Service and Postmaster General Potter does not toll the limitations period under 29 U.S.C. §160(b) for a breach of the duty of fair representation claim); *Moultrie v. Detroit Edison, Co.*, 2000 U.S. Dist. LEXIS 573 (E.D.Mich.) (January 11, 2000) ("Because the rights afforded an employee under a collective bargaining agreement are independent of those protected under Title VII, the proceedings before the EEOC did not toll the time to file" a § 301 hybrid action); *Brandenburg v. Wheeling-Pittsburgh Steel Corp.*, 1994 U.S. Dist. LEXIS 14033, 150 L.R.R.M. 2301 (N.D.W.Va.) (June 16, 1994).

U.S. 171, 190 (1967). "Courts may not substitute their own views for those of the union," and "'any substantial examination of a union's performance. . . . must be highly deferential." *Miller v. United States Postal Service*, 985 F.2d at 12, quoting *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65 (1991).

       1.     The Union's Decision Was Not Arbitrary.

A union's actions are arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational.'" *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991).

The Plaintiff's claim is based upon the Union's decision not to take his grievance to arbitration after processing it through the first two steps of the grievance procedure. However, "disaffected employees do not possess an absolute right to have their union shepherd a complaint through the grievance process to the bitter end." *Ayala v. Union de Tronquistas de Puerto Rico, Local 901*, 74 F.3d 344, 345 (1st Cir. 1996). "A union is entitled to decide that certain grievances lack sufficient merit to justify arbitration without breaching its duty of fair representation," and the duty of fair representation "is not a 'straightjacket' which forces unions to pursue grievance remedies to 'the bitter end.'" *Newbanks v. Central Gulf Lines, Inc.*, 64 F.Supp.2d 1, 4 (D. Mass. 1999). A union has great latitude in assessing the merits of a grievance and the level of effort it will expend to pursue that grievance. *Mensah v. Newton Buying Corp.*, 927 F.Supp. 518, 523 (D. Mass. 1996).

The primary question for this Court is whether the Union's decision not to arbitrate Mr. Preble's grievance was truly arbitrary, discriminatory, or in bad faith in

view of the facts known to it at the time of its decision. *Newbanks v. Central Gulf Lines, Inc.*, 64 F.Supp.2d 1, 5 (D. Mass. 1999). The material facts in terms of the Union's motion for summary judgment are "those that relate *only to whether the union's decision not to arbitrate* was arbitrary, discriminatory, or in bad faith based on the facts at the time of the decision." *Id.* (Emphasis added). Thus, even assuming, *arguendo*, that the "pleadings and affidavits may present a dispute of fact as to the underlying events of the termination itself . . . the material facts for purposes of this motion relate *only to whether the union's decision not to arbitrate* was arbitrary, discriminatory, or in bad faith." *Id.* (Emphasis added). Summary judgment must therefore issue unless Mr. Preble "offers some evidence that the 'handling of the grievance procedure itself' was 'materially deficient.'" *Id.*

Mr. Preble believes that his grievance had merit, and that the Union should have taken it to arbitration. Mr. Preble cannot establish, however, that the Union's decision not to pursue the grievance to arbitration was arbitrary, capricious, or so far outside the wide range of reasonableness as to be irrational.

At the Step Two grievance meeting, and during his own investigation, Mr. Fogell determined that Mr. Preble had previously been warned about going off his route on several occasions, including following one incident in which he had locked his keys in his car in front of his house during the workday; had been told not to go home during lunch; had been instructed to eat lunch with his co-workers; and had been suspended in February 2001 for following an individual home in his truck in an incident the Company deemed "road rage". Mr. Preble also laughed in the face of one of the supervisors during the Step 2 grievance meeting and informed Mr. Fogell in no uncertain terms that he

would settle for nothing less than reinstatement with full back pay. Following the meeting, Mr. Fogell reviewed Mr. Preble's personnel file, what had occurred during the two grievance meetings, his interviews with bargaining unit employees Kenneth Barrus and Joseph Maykis, and consulted with the Union's attorney. Ultimately, Mr. Fogell decided that the Union could not win the case, and informed Mr. Preble on January 2, 2002, that the Union would not process his grievance any further.

Mr. Fogell's actions were not arbitrary, as he only dropped the grievance after he had processed it through two steps, conducted an investigation, and consulted with legal counsel. See: *Miller v. United States Postal Service*, 985 F.2d 9, 12 (1st Cir. 1993) (a union's decision not to take a grievance to arbitration was not violative of its duty of fair representation where the union initially supported the grievance and processed it through the steps leading up to arbitration.); *Tracy v. Local 255 of the Int'l Union of Electronic, Electrical, Technical, Salaried and Machine Workers*, 783 F.Supp. 1527, 1530 (D.Mass. 1992) (Union agent's consultation with counsel who apprised him of the possible risks of such a move found to be strong evidence of good faith on the part of the Union.)

2. The Union's Decision Was Not Discriminatory or in Bad Faith.

In analyzing whether a union's conduct was discriminatory or in bad faith under the duty of fair representation, courts look "to the subjective motivation of the Union officials." *Simo v. Union of Needletrades, Industrial & Textile Employees, Southwest District Council*, 316 F.3d 974, 988 (9th Cir. 2003). "Bad faith" requires a showing of "fraud, or deceitful or dishonest action." *Considine v. Newspaper Agency Corporation*, 43 F.3d 1349, 1361 (10th Cir. 1994). The burden of proving that a union acted in bad faith with respect to the handling of an employee's grievance rests with the employee. *Id.*

Mr. Preble asserts that the Union did not process his grievance to arbitration on the basis of his alleged disabilities and/or his age. First, with respect to his medical conditions, Mr. Preble cannot establish that he suffers from a disability under Massachusetts law. Mr. Preble does not have an "impairment which substantially limits one or more major life activities." M.G.L. c. 151B, § 1(17). Mr. Preble testified that his diabetes did not affect his ability to perform his job or restrict the amount of time he could spend working on any particular day. (16-17). Similarly, with respect to his "heart condition," while Mr. Preble testified that he takes heart medication, his only restriction is lifting "extremely heavy items" or "shoveling snow". (11-12). A lifting restriction, standing alone, does not qualify as a protected disability. *Benoit v. Technical Mfg. Co.,* 331 F.3d 166, 176 (1st Cir. 2003); *City of Eerie,* 216 F.3d 354, 364 (3rd Cir. 2000). In addition, diabetes, without major symptoms that preclude work, is not a protected disability. *Nawrot v. CPC Int'l,* 277 F.3d 896, 904 (7th Cir. 1992).

Even if it can be said that Mr. Preble is disabled under Massachusetts law, he offers no evidence that the Union dropped his grievance short of arbitration because of his alleged disabilities or on the basis of his age. Mr. Preble cites no examples of disparate treatment in the Union's handling of other employees' grievances, and testified that he never heard Mr. Fogell make any comments about Mr. Preble's, or anyone else's, age or disability. Mr. Preble also testified that he had no reason to believe that Mr. Fogell had a bias against older or disabled employees[2].

---

[2]     Although Plaintiff's claim against the Union is that it discriminated against him in the way it handled his grievance, it should be noted that at no point during the entire grievance process did Mr. Preble ever inform Mr. Fogell that he believed TDI had discharged him based upon his age or alleged disabilities.

Mr. Preble's claim is simply that because he is over 40 years of age and has an alleged disability, the Union must not have taken his grievance to arbitration because of his age and disability. "Bald assertions are insufficient to withstand a Defendant's motion for summary judgment." *Dimitropoulos v. Painters Union District Council No. 9, 893, 299 F.Supp. 297, 299 (S.D.N.Y. 1995)* (Plaintiff "failed to set forth a single fact indicating that age played any role in the manner in which the Union prosecuted his grievance, as he only alleged that the employer "'did not provide Plaintiff member with assistance and support . . . and unlawfully sided with the [employer] on account of Plaintiff's age.'").

In *Pleas v. Olin Corporation*, 2000 U.S. Dist. LEXIS 14469, 6 Wage & Hour Cas. 2d (BNA) 941 (S.D. Ind. Sept. 29, 2000), the union believed an employee's claim lacked merit and, therefore, rather than pursue it through a grievance, recommended that the plaintiff accept voluntary retirement. *Id.* at [*54]. The Court found that the plaintiff failed to come forth with any evidence that the union's actions were taken on account of the plaintiff's age:

> Unfair representation as discrimination or bad faith requires a separate, but related, analysis into the subjective motivation behind the union's action . . . If a union has an honest belief that a grievance lacks merit, a plaintiff cannot later attempt to construe the union's decision as discriminatory or in bad faith. *Id.* at [*69].

See also: *Harris v. New York State Dept. of Corrections Services*, 1997 U.S. App. LEXIS 9658, [*6] (2nd Cir.) (May 1, 1997) (Union did not discriminate on the basis of sex or race in representing plaintiff where the plaintiff "offered nothing to support an inference that the Union's actions were motivated by racial or sexual animus."); *President v. Illinois Bell Telephone Company*, 865 F.Supp. 1279 (N.D.Ill. 1994) (No discriminatory motives

under either a Title VII or duty of fair representation claim where the plaintiff offered no evidence whatsoever of any tainted motivation, failed to compare the representation he received from the union with that received by other union members, and offered no written statements that even remotely could be viewed as reflecting such an animus.).

Likewise here, Mr. Preble has offered no evidence that the Union's decision not to pursue his grievance to arbitration was motivated by *animus* towards Mr. Preble on account of his age and/or alleged disability.  Mr. Preble does not compare the representation he received with that received by other union members, and actually testified that he knows of no other grievance ever filed concerning discipline for a workplace accident. (Tr. 20).  Instead, Mr. Preble relies simply on bald assertions of discrimination with nothing more.

F.    The Plaintiff Cannot Establish Discrimination by the Union Under Massachusetts Law.

Lastly, even if the Court finds that Mr. Preble's claims are not rooted in a claim for the breach of the duty of fair representation, but arise under Massachusetts law pursuant to M.G.L. c. 151, § 4, Plaintiff still cannot prevail.  For the reasons stated above, Mr. Preble presents no evidence that the Union was discriminatorily motivated in not taking his grievance to arbitration, and, in any event, he cannot establish that the Union's reason for not pursuing his grievance - that it thought it could not win at arbitration - was pretextual.  Mr. Fogell, after investigating the grievance, representing Mr. Preble at two grievance meetings, and discussing the matter with the Union's legal counsel, made the determination that the Union could not win at arbitration and, therefore, declined to pursue it any further.

G.    The Union Did Not Retaliate Against Plaintiff in Violation of M.G.L. c. 151B, § 4.4A.

Mr. Preble does not allege, nor can he show, that the Union retaliated against him in violation of M.G.L. c. 151B, § 4.4A. The alleged discriminatory act of the Union as pleaded by Mr. Preble is that the Union did not take his grievance to arbitration. Since this is the basis of the underlying discrimination charge, it cannot also constitute retaliation against Mr. Preble. The discrimination claim and the retaliation claim are one and the same. Mr. Preble cites no protected activity in which he engaged for which the Union would retaliate against him in the form of not taking his grievance to arbitration.

III.    Conclusion

For all of the foregoing reasons, the Court should find that the Plaintiff's claim is federally preempted by Section 301 of the Labor Management Relations Act and/or by the Union's duty of fair representation under the National Labor Relations Act. Therefore, Plaintiff's claims are time-barred by the corresponding six-month statute of limitations for such actions. Even if such claims are not barred by the relevant statue of limitations, the Court should find that the Plaintiff cannot establish that the Union violated its duty of fair representation and/or discriminated against him in any way. Defendant, therefore, respectfully requests that the Court dismiss the Plaintiff's Complaint and grant its Motion for Summary Judgment in its entirety.

Respectfully submitted,

Defendant Painters and Allied Trades
District Council No. 35
By its Attorneys,


Jonathan M. Conti (BBO # 657163)
FEINBERG, CAMPBELL & ZACK, P.C.
177 Milk Street
Boston, MA 02109
(617) 338-1976

Dated this _17th_ day of December, 2004.


## CERTIFICATE OF COMPLIANCE

I, Jonathan M. Conti, hereby certify that pursuant to Local Rule 7.1, I have conferred in good faith with counsel of record in this matter.

Jonathan M. Conti


## CERTIFICATE OF SERVICE

I, Jonathan M. Conti, attorney for the Plaintiff, hereby certify that on this day I mailed a copy of the within document by first class mail, postage prepaid, to Paul L. Nevins, Esq., 47 Church Street, Wellesley, MA 02482, and to Mark W. Batten, Esq., Proskauer Rose LLP, One International Place, Boston, MA 02110.

Dated this _17th_ day of December, 2004.

Jonathan M. Conti