**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**CIVIL ACTION NO. 04-11005-RWZ**

| | |
|---|---|
| WALTER S. PREBLE, | ) |
|   Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| TRANSPORTATION DISPLAYS, INC. | ) |
| d/b/a VIACOM OUTDOOR, and | ) |
| PAINTERS AND ALLIED TRADES | ) |
| DISTRICT 35, IUPAT, AFL-CIO, | ) |
|   Defendants | ) |

**THE PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE**
**MOTION FOR SUMMARY JUDGMENT OF THE DEFENDANT UNION**

**Hearing Requested**

**Procedural and Factual History**

    This proceeding arose as a result of an adverse employment action in which the plaintiff, Walter S. Preble, was discharged from employment on December 12, 2001, allegedly for unauthorized use of a company vehicle.

    Subsequently, Walter Preble filed administrative charges against both his employer and his union in which he alleged disability and age discrimination, and unlawful retaliation with the Massachusetts Commission Against Discrimination in May of 2002.

    The plaintiff next filed a civil action in Suffolk Superior Court which was removed by the defendant union, on the theory that Mr. Preble's complaints of discrimination were somehow preempted by federal labor law. In his original complaint, the plaintiff asserted claims solely under M.G.L. c. 151 § 4-et seq.

2

(the Massachusetts Fair Employment Practices Act), for unlawful discrimination on account of age and discrimination, and also for unlawful retaliation against him by his former union and his former employer.

In this action, the plaintiff alleges that he was discharged from employment on the pretext of unauthorized use of a company vehicle.[1] Because the defendant employer, Transportation Displays, did not have any written policies or procedures which forbade him from using the van - which he was required to drive - to get lunch during his unpaid lunch break, the plaintiff immediately filed a grievance through his union.[2]

Thereafter, Mr. Preble contends that his union, through its Business Agent, did not prepare him for the grievance procedure and failed to present any defense on his behalf. The union's Business Agent did not prepare the plaintiff for the grievance procedure;  failed to present any defense on his behalf; and that the union later filed no briefs on behalf of Mr. Preble which challenged his discharge from employment,[3] nor did the union ever file any grievance which alleged that the unilateral imposition of work rule by management was illegal because the adoption of such a work rule was

---

1.    **Complaint**, ¶ 30.
2.    **Complaint**, ¶ 31.
3.    **Complaint**, ¶¶ 31-33.

3

mandatory subject of bargaining [4] which had to be negotiated between the company and the union.

In effect, Mr. Preble alleges that the union condoned and ratified the company's unlawful discharge of him, and that it acquiesced to its discriminatory treatment of him. Mr. Preble says that "Essentially, I was treated by the company and by my union as 'dead wood,.'"[5]

**ARGUMENT**

**1. The Defendant Union's Instant Motion For Summary Judgment Must Be Denied Since The Plaintiff Can Show A Series Of Discrete Events And Acts Which Occurred Prior To The Plaintiff's Discharge Which, When Viewed Together, Show Evidence Of Age And Disability Discrimination.**

The union defendant in this action seeks summary judgment as to all counts in the plaintiff's **Verified Complaint For Injunctive Relief And Damages.** The standard for summary judgment is that it may be entered only if there is "no genuine issue of material fact." Fed. R. Civ. P. 56(c). Further,

---

4.   It is settled that the imposition of a work rule which dictated how and where an employee could take his unpaid lunch break is a mandatory subject of bargaining which could not be unilaterally imposed by management in a union setting. 29 U.S.C. § 151(a)(5) and 8(b)(3). See *NLRB v. Katz*, 369 U.S. 369 (1962); *NLRB v. American Nat'l Ins. Co.*, 343 U.S. 395 (1952).

  The union's refusal to challenge the basis for Preble's dismissal raises the compelling inference that the union - because it shared the employer's perception that Preble's was an older, troublesome employee and member - acquiesced to the employer's discriminatory conduct and, in effect, condoned and ratified the discriminatory conduct to which Preble was subjected.

5.   The **Verified Complaint Walter S. Preble**, at ¶ 33 which is attached as Exhibit 3 to the **Affidavit of Paul L. Nevins.**

4

"The moving party bears the burden of convincing the court's mind on each point."[6]

In weighing summary judgment, the motion judge shall consider the pleadings, depositions, answers to interrogatories, admissions on file and affidavits. Before granting summary judgment, the motion judge must view "in the light most favorable to the party opposing the motion" "the inferences to be drawn for the underlying facts contained in such materials."[7]

If the competing affidavits are at all divergent as to a material fact, the case must go to trial. The First Circuit has held that it would not matter if one side opposed the other's personal affidavit with "affidavits of thirteen bishops."[8]

The purpose of summary judgment is to "make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved."[9] As a general practice, summary judgment ought to be sparingly granted.[10]

---

6. Smith and Zobel, **Rules Practice**, §56.8, pages 359-362, Volume 8, **Massachusetts Practice**, *Snyder v. Hilligeist*, 246 F.2d 649 (D.C. App., 1957), *Driggers v. Business Men's Assur. Co. of America*, 219 F.2d 292 (1955).

7. *Morrissey v. Proctor & Gamble Co.*, 379 F.2d 675 (1967).

8. *Proctor & Gamble, supra.*

9. Wright, **Federal Practice & Procedure** (Rules Edition), at § 1231 (rev. ed. 1958).

10. In fact-intensive disputes such as the instant one, courts must be mindful of the provision of the Seventh Amendment to the United States

(continued...)

5

To prevail at summary judgment, the defendant union in this action, as the moving party, must surmount an impossible hurdle.[11] It must prove, based upon the pleading, and documentary evidence, that there exist no genuine issues of material facts which preclude its motion for summary judgment.[12]

---

10.   (...continued)
Constitution which guarantees "the right of trial by jury." To the extent that the doctrine "original intent" is a matter of concern to anyone, this provision contained in an amendment in the Bill of Rights is as worthy of veneration as any other constitutional guarantee. Factual issues, which are susceptible to different interpretations by the finders of fact and which affect common legal and equitable remedies should remain within the province of the jury. *Perez-Serrano v. Deleon-Velez*, 868 F.2d 30 (1st Cir. 1989). See also *Santiago-Nagron v. Castro-Davilla*, 865 F.2d 431 (1st Cir. 1989).

11.   Given the existing evidence, the defendant is not entitled to prevail on its motion for summary judgment, since the plaintiff has introduced appropriate material which demonstrates that proof of essential elements of the burdened party's claims does exist and will be presented at trial - viz., factual evidence of discriminatory acts which adversely affected his employment rights. See *Ramos v. Roche Products, Inc.*, 936 F.2d 43.  Even under the standards enunciated by the United States Supreme Court in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265( 1986) and *Anderson v. Liberty Lobby*, 91 L. Ed. 2d. 202 (1986) (which are generous to defendants moving for summary judgment and hostile to plaintiffs who oppose), the defendant cannot prevail since Walter Preble has presented evidence which is "significantly probative" and "not merely colorable."
   See also *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), a case in which the U.S. Supreme Court appears have abandoned  the "pretext-plus" analysis of employment discrimination cases and to echo the standards enunciated by the Massachusetts Supreme Judicial Court in *Lipschitz v. Raytheon Co.*, 434 Mass. 493 (1995).

12.   Given the existing documentary evidence, the plaintiff's claims of discrimination, under Massachusetts civil rights statutes would easily survive a motion for a directed verdict since federal courts have consistently held that a motion for directed verdict may not be granted, if anywhere in the evidence,
(continued...)

6

Even a cursory review of the documentary evidence in this case reveals the existence of a number of genuine and material issues of fact about which the plaintiff and the defendant do not agree. The plaintiff's proffered evidence includes a series of documents which evidence disparate treatment. These documents show that younger, and non-handicapped union employees, were treated more favorably than the plaintiff with respect to workplace infractions.

Because of the existence of these genuine, material facts in dispute, the court, as a matter of law, is precluded from granting the defendant's motion for summary judgment.

2.  **The Defendant Union Cannot Show, Either As A Matter of Fact Or Law, That Preble's Claims Have Been Preempted By Federal Law.**

There is no presumption in favor of preemption, as the defendant union seems to assert.[13] In deciding the question of subject-matter jurisdiction, it is

---

12. (...continued)
from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff, even if other inferences could be also drawn that are not in favor of the plaintiff. *Whitsell v. Alexander*, 229 F.2d 47 (1956).

In addition, the court must assume the credibility of the plaintiff's evidence. *U.S. v. Hess*, 341 F.2d 444 (1965); *Globe Liquor v. Roman,* 332 U.S.D. 571 (1948), and must also consider, in support of the plaintiff, any evidence submitted by the defendant, if it assists the plaintiff's case. *Liberty Mutual Ins. Co. v. Davis,* 412 F. 2d 475 (1969); *Southern Glass & Builders Supply Co. v. U.S.*, 398 F.2d (1968).

Furthermore, a directed verdict may not be granted even where the parties agree upon all the facts but more than one inference may reasonably be drawn from them and the parties disagree about what inference should be drawn. *Southern Glass & Builders Supply Co. v. U.S.*, 398 F.2d (1968).

(continued...)

settled law that this court must take as true the pertinent allegations set forth in Preble's' complaint;[14] and this Court is obliged to consider only those jurisdictional facts which existed at the time the action commenced, "Jurisdiction once attached is not impaired by what happens later."[15] On that latter basis alone, the defendant's preemption claim is barred.

Moreover, whether a claim is preempted depends upon whether the state law action "confers non-negotiable state-law rights on employers or employees independent of any rights established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract."[16]

a. **The Factual Prerequisites For Preemption Are Not Present Here.**

---

(...continued)
13.   It is very curious, but not surprising, that the union defendant would seek to hide behind the shield of federal regulatory law, particularly as some of that law has been articulated in the past fifteen years by federal courts which are essentially hostile to employee rights and to victims of employment discrimination. It is ironic here, however, that the defendant would claim some kind of federal "exemption" for their misconduct, particularly when they can cite no provision of the NLRA or Labor Management relations Act which would provide the plaintiff with any remedy or redress for the wrongs done to him, which is an essential predicate to preemption.

14.   *Cross v. Commissioner of Correction*, 27 Mass. App. Ct.1154, 539 N.E.2d 74, 75 (1991), review denied 410 Mass. 1204, 542 N.E.2d 602(1989) (rescript).

15.   *O'Dea v. J.A.L., Inc.*, 30 Mass. App. Ct. 449, 453-454, 569 N.E.2d 841, 845 (1991).

16.   *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985).

8

The defendant union claims that the U.S. Congress, in enacting the Labor Management Relations Act, 29 U.S.C. 185(a), intentionally chose to preempt state claims of employment discrimination which employees of a unionized company might lodge against their union. The defendant, despite its plethora citations to inapposite case law, is unable to show, in any way, how or why Congress intended to do so.

Since there are no express words of preemption, the defendant suggests that there exists an "implied" preemption. Implied preemption is further classified as either field or conflict preemption:

> ".... Implied field preemption arises where the federal regulations evince a scheme of regulation so pervasive as to leave no room for state regulation.[17] Implied conflict preemption arises where the enforcement of a state law would create a conflict either by frustrating the federal statute's purposes and objectives or rendering it impossible for a private party to comply with both federal and state requirements.[18] If these impediments are not present, then state law survives...."[19]

Since the defendant can point to no such impediments, their claim of preemption must fail.

    **b. The Legal Prerequisites For Preemption Are Not Present Here**

---

17.   *Pacific Gas & Electric Co. v. State Energy Resources Conservation & Dev. Comm'n*, 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed 752 (1983).

18.   *Norris v. Lumbermen's Mut. Cas. Co.*, 881 F.2d 1147 (1st. Cir., 1989); see also *English v. General Electric Co.*, 496 U.S. 72, 110 S.Ct. 2270, 110 L.Ed.2d 65(1990), which cited *Norris* with approval.

19.   § 1.1 **Federal Preemption of State Regulation Of Employment-Overview**, Employment Law Moriearty, (Massachusetts Practice Series), Moriearty, Adkins and Lipsitz (2003 edition), at 4.

9

It is a truism that federal preemption of state law claims brought by employees may occur only where the federal interest in the employment relationship is paramount. In construing preemption claims asserted under federal labor law, the United States Supreme Court has unequivocally held that only tort or contract claims for wrongful termination that require construction of the express or implied terms of a collective bargaining argument are barred by § 301 of the Labor Management-Relations Act, 29 U.S.C. § 185(a).[20]

The bright-line test which the Supreme Court enunciated in the *Allis-Chalmers* is applicable to the instant case: Whether a claim is preempted depends solely upon whether the state law action "confers nonnegotiable state-law rights on employers or employees independent of any rights established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract."[21]

The defendant in this case cannot satisfy that burden of proof since:

> "[N]ot every dispute concerning employment, or tangentially involving a provision of a collective bargaining agreement, is preempted by § 301 or

---

20.  *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210-211, 105 S.Ct. 1904, 85 L.Ed.2d 206(1985) (a case in which an employer's self-funded employee benefit plan was integrated into the collective-bargaining agreement). The Supreme Court has said that preemption will only be found where "The interests of interpretive uniformity and predictability that require that labor contract suits be reserved by reference to federal law require that the meaning given to a contract phrase or term be subject to uniform federal interpretation." *Id.* at 211.

21.  *Id.* at 213.

10

other provisions of federal labor law....In extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.[22]

Finally, it is settled that claims which arise from nonnegotiable rights conferred upon employees by state law or which present purely factual questions as to the motivations of the employer or union, and which do not require interpretations of collective bargaining provisions, will not be preempted under § 301.[23]

3.   **The Evidence Shows That The Defendant Union Is Liable To To The Plaintiff For Violation Of M.G.L. c. 151B, § 4.2 For Differential Treatment Based Upon Age And Disability.**

M.G.L. c. 151B, § 4.2 prohibits a labor organization, "...because of age....or because of the handicap of any person alleging to be a qualified handicapped person...to discriminate in anyway against any of its members..." In the instant case, Walter Preble contends that, as the second most senior union member and as one who suffers from diabetes and a heart condition, he was discriminated against twice: First, Mr. Preble's employer discharged him from employment on a spurious charge that, by using the company vehicle to get his lunch at home despite his work in the vicinity, he had engaged in an

---

22.   *Ibid*, at 211-12

23.   *Lividas v. Bradshaw*, 512 U.S. 107 (1994). See also *Ralph v. Lucent Technologies*, 135 F.3d 166 (1st Cir., 1998) a case in which the First Circuit held that discrimination claims arising under state and federal handicap law were not preempted by §301 because they constitute nonnegotiable statutory rights which existed independently of any collective bargaining rights.

11

unauthorized use. Secondly, Mr. Preble argues that his union, failed to offer any defense whatsoever against his employer's mistreatment.

The documentary evidence which the plaintiff has marshalled shows a number of separate factual events which, taken together, create actionable claims of disability discrimination and age discrimination, in violation of chapter 151B of the General Laws. Any arguments by the defendant union to the contrary notwithstanding, Mr. Preble has met the legal standards set forth under M.G.L. c. 151B, §4, ¶16. The existing documentary record shows that Mr. Preble was a "qualified handicapped person" who was "capable of performing the essential functions of his position with...reasonable accommodation."

The documentary record also shows that Mr. Preble's employer and the defendant union were aware of Mr. Preble's heart condition.[24] In addition, Mr. Preble has testified that he informed his employer's Operations Manager, Richard McLean, of his heart condition and his diabetes. The unrebutted evidence also shows that Mr. Preble was the second most senior member of the defendant union and the second oldest employee.[25]

---

24.   See Exhibit 7 attached to **Affidavit Of Paul L. Nevins**, which was submitted in response to TDI's pending separate, pending motion for summary judgment. These notes of Charles Fogell, the union's business representative, of his interview with Walter Preble on 12/12/01 state, on the last page, "The company knows he has a heart condition."

25.   See Exhibit 4 to the **Affidavit Of Paul L. Nevins** which was filed in response to the company's pending summary judgment motion.

12

Walter Preble has thus satisfied the elements of a *prima facie* case. Evidence of disparate treatment under chapter 151B requires that the Complainant show (1) that he was a member of one or more protected classes; (2) that his membership in these protected classes provided a defense to his employer's treatment of him; (3) and that his union, in failing to present any defenses at all on Mr. Preble's behalf, allowed the employer to treat him differently than similarly-situated non-handicapped or younger union members, or it permitted him to suffer a detriment to his employment because of his membership in those protected classes.[26]

With respect to disparate treatment claims, even when a "smoking gun" is absent, inferences are acceptable as evidence to prove the elements of a

---

26.   The requirement of a "prima facie" case was first suggested by the United States Supreme Court in *McDonell Douglas Corp. v. Green*, 411 US 792, 36 L.Ed 2d 668, 93 S.Ct 1817 (1973). See also *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273 (1976) and *Loeb v. Textron*, 600 F.2d 1003 (1st Cir., 1979). However, the necessary elements of a *prima facie* case are not "cast in concrete" or subject to a rigid formula. A *prima facie* case may be made out in a number of different ways which may be tailored to the precise facts and to the nature of the discrimination claim.  *Whalen v. NYNEX Information Resources Company,* 419 Mass. 792 (1995).
   The *McDonnell Douglas* line of cases was initially quoted with approval by the Supreme Judicial Court in interpreting chapter 151B, in *Wheelock College v. MCAD*, 371 Mass. 130, 137, 355 N.E. 2d 309, 314 (1976).  However, more recently the Supreme Judicial Court has emphasized that chapter 151B jurisprudence diverges from recent federal cases under Title VII and the ADEA, with respect to the levels of proof necessary both to assert and rebut legitimate business justifications. See *Donald Blare v. Husky Injection Molding Systems Of Boston*, 419 Mass. 437 (1995).
    See also *Lipchitz v. Raytheon Company*, 434 Mass. 493 (2001), 2001 Mass, LEXIS 382. See also *Abramian v. President & Fellows Of Harvard College, et al.*, 432 Mass. 107 (2000).

13

*prima facie* case.[27]   Here, the testimonial and the documentary evidence set forth sufficient evidence to defeat the union's motion or summary judgment.

4.   **The Defendant Union Cannot Show A Legitimate, Non-Discriminatory Business Reason For Its Treatment Of Walter Preble.**

Once the plaintiff has articulated a *prima facie* case, the burden then shifts to the defendant union to articulate a legitimate, non-discriminatory reason for its actions.[28]   Even if the union and its agents had more than one reason for acting as they did, Mr. Preble would still prevail on his claims of

---

27.   *Wheelock College v. MCAD*, 371 Mass. 130, 355 N.E. 2d 309 (1976), at 135 n. 5, which was cited by the Supreme Judicial Court in the *Whalen* case, *supra*, carried into Massachusetts law the basic outline of the *prima facie* case, pretext, and rebuttal, and inferential method of proof of discrimination (as opposed to direct proof) initially approved by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), but noted that "in other factual situations the prima facie proof required of a complainant might be different." *Ibid.*, at n.13.

28.   *Wheelock College v. MCAD*, 371 Mass. 130, 355 N.E. 2d 309 (1976). The employer is obliged to "produce credible evidence to show that the reason or reasons advanced were the real reasons." *Sarni Original Dry Cleaners, Inc. v. Cooke*, 388 Mass. 611, 447 N.E.2d 1228 (1983), at 614-615. Note also that *Wheelock, supra*, note 1, makes it clear that "credible evidence" that the claimed legitimate business justification was the real reason is required from the employer, to shift the burden of persuasion on this issue back to the Complainant.
   The employer is obliged both to "advanc[e] lawful grounds for the action taken" and "to produc[e] evidence of underlying facts in support thereof.'" *Brunner v. Stone & Webster Eng'g Corp.*, 413 Mass. 698, 700, 603 N.E.2d (1992), quoting *Smith College v. Massachusetts Comm'n Against Discrimin.*, 371 Mass. 130, 139, 355 N.E.2d 309,315 (1976).
   Finally, it is settled that Mr. Preble may meet his burden to prove discrimination directly, by persuading the finder of fact that it is more likely that a discriminatory reason motivated the union, or indirectly, by showing the union's proffered explanation is not worthy of belief.  *Donald Blare v. Husky Injection Molding Systems Of Boston*, 419 Mass. 437 (1995).

14

discrimination. What matters is that the discriminatory reason made a difference and that the defendant would not have acted as it did solely for any of the reasons which it subsequently proffers.[29] Even good intentions are not a defense to liability.[30]

Hence, at trial, the finders of fact could properly conclude that the defendant union's's explanation for its treatment of Walter Preble, when viewed in the light of the documentary evidence and the controlling case law, is not credible.[31] Rather, the probative evidence shows that the union, in fact, did

---

29. *Cancellier, et al v. Federated Department Stores d/b/a I. Magnin*, 672 F.2d 1312, at 1315 (9th Cir. 1982), *cert. den.*, 459 U.S. 859, 74 L.Ed.2d 113, 103 S.Ct. 131 (1982). See *Loeb, supra*, 600 F.2d at 1019.

30. *Sarni Original Dry Cleaners v. MCAD*, 388 Mass. 611, 447 N.E.2d 1228 (1983).

31. The controlling case law - most emphatically - rejects any requirement that an employee must prove pretext:
> "The phrase 'pretext for discrimination' implies that the plaintiff must prove not only that a reason given by the employer for the adverse decision was false, but that the reason was given to cover a discriminatory animus. Our decisions do not require this. See *Abramian v. President & Fellows of Harvard College*, 432 Mass. at 118. Cf. *Matthews v. Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 128, 686 N.E.2d 1303 (1997). If the employee were able to prove by direct evidence that discriminatory animus motivated the decision, she would not have to rely on the indirect method of proving animus by disproving at least one of the employer's articulated, nondiscriminatory reasons. Compare *Wynn & Wynn, P.C. v. Massachusetts Comm'n Against Discrimination*, 431 Mass. 655, 729 N.E.2d 1068 (2000), with *Buckley Nursing Home, Inc. v. Massachusetts Comm'n Against Discrimination*, Mass. App. Ct. 172, 478 N.E.2d 1292 (1985).
> "....
> "In an indirect evidence case, if the fact finder is persuaded that one or more of the employer's reasons is false, it may (but need not) infer that

(continued...)

15

not provide the "vigorous, genuine and thorough defense" it claims it provided to Mr. Preble in response to the grievance related to his discharge from employment on December 12, 2001:

1.   The employer and union had previously - and later - negotiated work rules as part of the collective bargaining process which addressed issues of tardiness, absence and alcoholism, but none were ever negotiated which prohibited Mr. Preble - or any other employee - from using a company vehicle to which that employee was assigned on a workday from using the vehicle to get lunch on an unpaid break. See Exhibit B to the Collective Bargaining Agreement.[32]

---

31.   (...continued)
the employer is covering up a discriminatory intent, motive or state of mind. See *Riffelmacher v. Police Comm'rs of Springfield*, 27 Mass. App. Ct. 159, 165, 535 N.E.2d 1280 (1989). Permitting, but not requiring the fact finder to draw the inference strikes the proper balance by holding the plaintiff to her ultimate burden without requiring her to produce direct evidence of discriminatory animus, a form of evidence that, we recognize, rarely exists. See *Wheelock College v. Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 137, 355 N.E.2d 309 (1976). Cf. *Sarni Original Dry Cleaners, Inc. v. Cooke*, 388 Mass. 611, 615-616, 447 N.E.2d 1228 (1983). That inference, combined with the evidence adduced to meet the employee's burden of proof under the first stage of McDonnell Douglas, permits the fact finder to conclude that the employee has satisfied her ultimate burden of proving that the decision was made "because of" the unlawful discrimination as G. L. c. 151B, § 4 (1), requires. n13 See *Abramian v. President & Fellows of Harvard College*, 432 Mass. at 118."
*Lipchitz v. Raytheon Company*, 434 Mass. 493 (2001), at 501; 2001 Mass. LEXIS 382.

32.   Exhibit 2 to **The Affidavit Of Walter S. Preble In Opposition To The Motion Of Transportation Displays For Summary Judgment.** The refusal
(continued...)

16

2.      Section 8.3 of the Collective Bargaining Agreement provides that "..no employee shall be suspended, discharged or otherwise disciplined without just cause"[33] and the "company shall have the burden to demonstrating just cause."[34]

3.      The union's own notes confirmed that there was no written work-rule which prohibited an employee from using the company van to get lunch when assigned to a work area.[35]

4.      Despite this knowledge, the union made no argument in favor of Walter Preble at his Step 2 hearing but, instead, remained mute and permitted him to be grilled by Mr. McLean.[36]

---

32.     (...continued)
of the union to challenge the unilateral imposition of a non-negotiated work rule creates a compelling inference the union's proffered explanation for its treatment of Walter Preble is not worthy of belief. See *Donald Blare v. Husky Injection Molding Systems Of Boston*, 419 Mass. 437 (1995).

33.     See Exhibit 1 attached hereto.

34.     Exhibit 2 to **The Affidavit Of Walter S. Preble In Opposition To The Motion Of Transportation Displays For Summary Judgment.** The refusal of the union to challenge the unilateral imposition of a non-negotiated work rule creates a compelling inference the union's proffered explanation for its treatment of Walter Preble is not worthy of belief. See *Donald Blare v. Husky Injection Molding Systems Of Boston*, 419 Mass. 437 (1995).

35.     See Exhibit 7 attached to **Affidavit Of Paul L. Nevins**, which was submitted in response to TDI's pending separate, pending motion for summary judgment. These notes of Charles Fogell, the union's business representative, of his interview with Walter Preble on 12/12/01.

36.     See Exhibit 11 attached to the **Affidavit Of Paul L. Nevins in Response To The Motion Of the Defendant Union For Summary Judgment**, Charles Fogell's notes of the Step 2 grievance hearing.

17

5.     Finally, at the conclusion of that hearing, the Business Agent, Charles Fogell, in response to Walter Preble's request for arbitration stated that "We don't have a prayer." [37]

Hence, the evidence shows that the union capitulated to the specious reason proffered by the employer for Preble's discharge and thus ratified the employer's illegal discrimination, and thus it also discriminated against him.[38] The union abandoned Walter Preble and, in effect, the union ratified the perception of Mr. Preble's employer - that because of his age, infirmities and his persistence in insisting upon the letter of the contract - he was "dead wood."

 4.   **Mr. Preble's Statutory Claims Under M.G.L. c. 151B Must Be Viewed In A Manner Which Assures Substantial Justice.**

Finally, this Court is required to apply Massachusetts case law as those authorities construe M.G.L. c. 151B with respect to Walter Preble's claims under that statute. The mandate of the Massachusetts Fair Employment Practices Act requires that its provisions be construed broadly, as set forth in

---

37.   See Exhibit 11 attached to the **Affidavit Of Paul L. Nevins in Response To The Motion Of the Defendant Union For Summary Judgment**, Charles Fogell's notes of the Step 2 grievance hearing.

38.   The documentary evidence suggests that Charles Fogell and the union's leadership were persuaded by the critical comments of the union steward, Kenneth Barrus, that Walter Preble was a recalcitrant curmudgeon who, as a senior older union member, would continue to insist that the union an d the employer religiously adhere to the obligations of the contract, in distinct contrast to the employer wanted a more docile work force of new hires. See Exhibit's 10 and 11 the **Affidavit of Paul L. Nevins In Response To The Motion Of The Defendant Union For Summary Judgment**.

18

M.G.L. c. 151B, §9 - "The provisions of this act shall be construed liberally for the accomplishment of the purposes thereof..."

It is also settled law that the burden of any defense rests entirely with the defendant. The defense is narrowly applied and must be founded on objective, rather than the defendant's subjective, opinions.[39]

## Conclusion

WHEREFORE, for all of the above-stated reasons, the defendant's motion for summary judgment, as to each count sought, must be denied.

## Hearing Requested

The plaintiff requests a hearing on the issues of fact and law presented by defendant's motion.

Respectfully submitted,

WALTER S. PREBLE

By his attorney,

/s/ Paul L. Nevins

Paul L. Nevins
BBO # 369930
47 Church Street
Wellesley, MA 02482
(781) 237-9018

---

39. *Sarni Original Dry Cleaners v. Cooke*, 388 Mass. 611, 447 N.E.2d 1228 (1983).

19

**Certificate of Service**

      The undersigned hereby certifies that, on January 14, 2005, he served a true copy of the foregoing upon all parties by causing it to be sent electronically and, via first class mail, postage prepaid, to:

                Michael A. Feinberg, Esquire
                Jonathan M. Conti, Esquire
               **Feinberg, Campbell & Zack, P.C.**
                    177 Milk Street
                    Boston, MA 02109

and:

                 Mark W. Batten, Esquire
                    **Proskauer Rose LLP**
                 One International Place
                    Boston, MA 02110

               ___/s/ Paul L. Nevins/_____
                    Paul L. Nevins