## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**CIVIL ACTION NO. 04-11005-RWZ**

| | |
|---|---|
| WALTER S. PREBLE, | ) |
|   Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| TRANSPORTATION DISPLAYS, INC. | ) |
| d/b/a VIACOM OUTDOOR, and | ) |
| PAINTERS AND ALLIED TRADES | ) |
| DISTRICT 35, IUPAT, AFL-CIO, | ) |
|   Defendants | ) |

### THE PLAINTIFF'S RESPONSE TO THE STATEMENT OF THE DEFENDANT, PAINTERS AND ALLIED TRADES DISTRICT COUNCIL NO. 35, OF ITS ALLEGEDLY UNDISPUTED FACTS, IN OPPOSITION TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The plaintiff submits the following response to each of the defendant's 67 numbered statements of allegedly undisputed, material facts. The plaintiff categorically denies 10 of the defendant's numbered sets of facts which defendant claims are material and undisputed.[1] In addition, the plaintiff moves to strike 14 of the alleged statements of fact because they are immaterial, or irrelevant to the case, or are otherwise not admissible under the federal rules of evidence, as provided for under Fed. R. Civ. P. 56(e).

The documentary evidence upon which this plaintiff's response is based,

---

1.     The plaintiff also notes that, in response to 31 separately numbered, factual allegations set forth in the plaintiff's **Verified Complaint For Injunctive Relief And Damages** under his **Statement of The Facts,** the defendant denied, in whole or in part, 5 of the plaintiff's factual allegations.
Because a number of the defendant's denials create critical issues of material fact the entry of summary judgment, as a matter of law, is precluded.

2

coupled with the pleadings, rebut the salient facts upon which the defendant

bases its motion for summary judgment:

**Facts**

1.    Transportation Displays, Inc. ("TDI") is in the business of outdoor

advertising. (Deposition of Walter Preble at 20-22. A copy of excerpted pages

from Mr. Preble's deposition is attached to the Affidavit of Jonathan M. Conti,

which has been submitted in support of Defendants's Motion for Summary

Judgement).

**The Plaintiff's Response To The First Statement(s):** The statement is

admitted.

2.    Defendant Painters and Allied Trades District council No.3 5 ("Union") is

the collective bargaining representative for all employees at TDI's facility

located in Randolph, Massachusetts. (Affidavit of Charles E. Fogell,¶ 3).

**The Plaintiff's Response To The Second Statement(s):** The statement is

admitted.

3.    Charles E. Fogell is the Business Representative from Painters and Allied

Trades District Council No. 35 who has represented the bargaining unit

employees at TDI and its predecessors since approximately 1990. (Fogell Dep.

at 14; Fogell Aff., ¶ 1).

**The Plaintiff's Response To The Third Statement(s):** The statement is

admitted.

4.   The Union represents all employees at TDI's Randolph, Massachusetts

facility except for supervisors and others excluded by the National Labor

Relations Act. (Fogell Off.,¶3).

**The Plaintiff's Response To The Fourth Statement(s):** The statement is

admitted.

5.     At all relevant times, TDI and the Union were parties to a collective

bargaining agreement with effective dates of November 3, 2001 through July

31, 2004. (Fogell Off., ¶ 4.Eh. A).

**The Plaintiff's Response To The Fifth Statement(s):** The statement is

admitted.

6.    TDI has a contract with Massachusetts Bay Transit Authority ("MBA"),

pursuant to which TDI employees install advertising materials on busses,

subway cars, and commuter trains, including the metal frames which hold

those materials(Preble Dept. at 20-22).

**The Plaintiff's Response To The Sixth Statement(s):** The statement is

admitted.

7.    Plaintiff Walter Preble is a former employee of TDI, and was a member of

the Union while he was employed by TDI. (Preble Dept. at 103).

**The Plaintiff's Response To The Seventh Statement(s):** The statement is

admitted.

8.     Mr. Preble's general responsibilities while he was employed by TDI were

to drive a TDI truck to various MBTA "barns" to install advertising on MBA's

vehicles. (Preble De. at 27-28).

4

**The Plaintiff's Response To The Eighth Statement(s):** The statement is admitted.

9.    Mr. Preble was employed by Park Transit until the summer of 2000, when TDI acquired Park Transit.(Preble De. at 26).

**The Plaintiff's Response To The Ninth Statement(s):** The statement is admitted.

10.    After TDI acquired Park Transit, employees were required to travel to and from customer sites only in TDI vehicles, rather than the employees' own vehicles. (Preble De. at 228-29).

**The Plaintiff's Response To The Tenth Statement(s):** The statement is admitted.

11.  Following TDI's acquisition of Park Transit, Operations Manager Richard MacLean became Mr. Treble's supervisor.(Preble Dep. at 26). MacLean informed the bargaining unit employees on several occasions that employees were not to drive TDI's vehicles off route. (Preble Dep. at 30).

**The Plaintiff's Evidentiary Objection To The Eleventh Statement(s):[2]**Fed. R .Civ.P. 56(e) provides, in relevant part, that "Supporting and opposing affidavits...shall set forth such facts as would be admissible in evidence..." The defendant's **Statement(s) Number 11** must be stricken because it is irrelevant evidence under Fed. Rule Evid. 402. The statement is irrelevant.

---

2.    See the **Plaintiff's Cross-Motion To Strike The Defendant's Statement of Undisputed Facts.**

5

Transportation Displays never negotiated any work rule with the union, as required, which prohibited employees from using the company van to get lunch when assigned to a work area. See Exhibit 7 attached the **Affidavit Of Paul L. Nevins,** the notes of Charles Fogell, Business Agent of his initial review of the reason given by the company for my discharge. See Exhibit 2 to the **Affidavit of Walter S. Preble In Opposition To The Motion Of Transportation Displays For Summary Judgment**, the **TDI Work Rules.** In addition, although Mr. McLean told employees that they were not to go "off route," Mr. McLean never defined what constituted "off route." " See the **Affidavit of Walter S. Preble In Opposition To The Motion Of Transportation Displays For Summary Judgment**, at ¶ ¶ 20 and 21.

12.     In or about October 2000, Mr. Treble, while driving a TDI vehicle, was involved in an incident with another driver whom Mr. Preble believed was driving too slowly. (Preble Dep. at 41-43).

**The Plaintiff's Evidentiary Objection To The Twelfth Statement(s):**[3]

Fed. R .Civ.P. 56(e) provides, in relevant part, that "Supporting and opposing affidavits...shall set forth such facts as would be admissible in evidence..." The defendant's **Statement(s) Number 12** must be stricken because it is irrelevant evidence under Fed. Rule Evid. 402. There is no evidence that Mr. Preble ever received a written reprimand or was ever disciplined for that alleged incident.

---

3.     See the **Plaintiff's Cross-Motion To Strike The Defendant's Statement of Undisputed Facts.**

6

13.    Following the incident in October 2000, a police officer visited the TDI garage on that same evening to investigate. (Preble Dep. at 41-42).

**The Plaintiff's Response To The Thirteenth Statement(s):** The statement is **denied**: The cited deposition pages do not support the statement.

**The Plaintiff's Evidentiary Objection To The Thirteenth Statement(s):**[4]

Fed. R .Civ.P. 56(e) provides, in relevant part, that "Supporting and opposing affidavits...shall set forth such facts as would be admissible in evidence..." The defendant's **Statement(s) Number 13** must be stricken because it is irrelevant evidence under Fed. Rule Evid. 402. There is no evidence that Mr. Preble ever received a written reprimand or was ever disciplined for that alleged incident.

14.    When Mr. MacLean learned of the October 2000 incident, he characterized the incident as "road  rage" and warned Mr. Preble not to let such an incident happen again. (Preble Dep. at 45). Mr. MacLean told Mr. Preble that he could be terminated if Mr. Preble had "another incident of road rage.....or if (Mr.Preble) gave somebody the finger or some other form of communication." (Preble Dep. at 45).

**The Plaintiff's Evidentiary Objection To The Fourteenth Statement(s):**[5]

Fed. R .Civ.P. 56(e) provides, in relevant part, that "Supporting and opposing affidavits...shall set forth such facts as would be admissible in evidence..." The

---

4.    See the **Plaintiff's Cross-Motion To Strike The Defendant's Statement of Undisputed Facts.**

5.    See the **Plaintiff's Cross-Motion To Strike The Defendant's Statement of Undisputed Facts.**

7

defendant's **Statement(s) Number 14** must be stricken because it is irrelevant evidence under Fed. Rule Evid. 402. There is no evidence that Mr. Preble ever received a written reprimand or was ever disciplined for that alleged incident.

15.   In or about February 2001, Mr. Preble was involved in another incident while driving in the center lane of a three-lane road. Mr. Preble was in the middle lane, and another truck was to the left of Mr. Preble's TDI vehicle. Both the other vehicle and Mr. Preble made left hand turns. (Preble Dep. at 46-47).

**The Plaintiff's Response To The Fifteenth Statement(s):** The statement is admitted.

16.   After making the turn, Mr. Preble realized that his lane was about to become a right turn only lane, and therefore he unsuccessfully attempted to pass the truck on his left. Mr. Preble then "hit the brakes" and pulled behind the other truck (Preble Dep. at 48-49).

**The Plaintiff's Response To The Sixteenth Statement(s):** The statement is admitted.

17.   When he pulled behind the other truck, Mr. Preble realized from the license plate that the vehicle was being driven by an MBTA mechanic who lived near Mr. Preble, although the two had never met. (Preble Dep. at 50). Mr. Preble was also aware that the individual driving the vehicle was a mechanic who worked at an MBTA garage in Charlestown. (Preble Dep. at 50).

**The Plaintiff's Response To The Seventeenth Statement(s):** The statement is admitted.

8

18.    Mr. Preble followed the MBTA mechanic to his home, at which time Mr.
Preble and the mechanic exchanged words. (Preble Dep. at 51-52). Mr. Preble
rolled down his window and asked the mechanic "what the problem was, why
he cut (him) off back there. (Preble Dep. at 51-52).

**The Plaintiff's Response To The Eighteenth Statement(s):** The statement is
**denied**. See Exhibit 2 attached to the **Affidavit Of Paul L. Nevins In
Response To The Defendant Union's Motion For Summary Judgment**, the
Deposition of Walter Preble, at pages 49-52.

19.    The mechanic told Mr. Preble that his left turn was illegal, and gestured
at Mr. Preble with something that looked like a wooden club in his hand.
(Preble Dep. at 52). Mr. Preble told the mechanic, "why don't you go back to
Charlestown," and then drove away. (Preble Dep. at 53).

**The Plaintiff's Response To The Nineteenth Statement(s):** The statement is
admitted.

20.    Mr. Preble did not report the October 2000 incident with the MBTA
mechanic to Mr. MacLean, but the MBTA mechanic called TDI and spoke with
Mr. MacLean. (Preble Dep. at 54).

**The Plaintiff's Response To The Twentieth Statement(s):** The statement is
admitted.

21.    As a result of the incident, TDI suspended Mr. Preble for a week. (Preble
Dep. at 55).  Mr. Preble did not grieve the suspension after speaking with
Union Business Representative Charles Fogell. (Treble Dep. at 61, 62, 105).

9

**The Plaintiff's Response To The Twenty-First Statement(s):** The statement is **denied**. The plaintiff did try to file a grievance but was discouraged from pursuing it by the Union Business Representative.  See Exhibit 3 attached to the **Affidavit Of Paul L. Nevins In Response To The Defendant Union's Motion For Summary Judgment**, the Deposition of Charles Fogell, at pages 33-34, and Exhibit  2 attached thereto, the deposition of Walter Preble, at pages 61-64.

22.    On December 11, 2001, Mr. Preble went off his route to go home for lunch with a TDI vehicle. As he returned from lunch, Mr. Preble struck a parked car as he turned corner in South Boston. (Preble Dep. at 75-77).

**The Plaintiff's Response To The Twenty-Second Statement(s):** The statement is **denied**.

**The Plaintiff's Evidentiary Objection To The Twenty-Second Statement(s):**[6] Fed. R .Civ.P. 56(e) provides, in relevant part, that "Supporting and opposing affidavits...shall set forth such facts as would be admissible in evidence..." The defendant's **Statement(s) Number 22** must be stricken because it is irrelevant evidence under Fed. Rule Evid. 402. The evidence shows that no written rule was ever promulgated by the company, or negotiated with the union, about where employees could go for lunch or how they could get to lunch, nor were employees paid by the company during their

6.    See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

lunch break. See Exhibit 5 to the **Affidavit Of Paul L. Nevins, Deposition of Richard MacLean**, at pages 30-34. Further, there is no evidence that the plaintiff had ever received a written warning or suspension, prior to his discharge, for having eaten his lunch at home when he worked in the vicinity of his house.

The statement must also be struck because it is an improper conclusory statement not supported by Mr. Preble's testimony as cited.

23.    Mr. Preble claimed he did not immediately realize he had struck the vehicle, but a police officer who witnessed the accident flagged him down. (Preble Dep. at 77).

**The Plaintiff's Response To The Twenty-Third Statement(s):** The statement is admitted.

24.     Following the accident, Mr. Preble drove back to the MBTA garage where he had left his partner, Kenneth Barrus, and returned to the TDI garage in Randolph, Massachusetts. (Preble Dep. at 78-79).

**Plaintiff's Response To The Twenty-Fourth Statement(s):** The statement is admitted.

25.    Mr. Preble never mentioned the accident to Mr. Barrus, and when he got back to the TDI garage he did not report the incident to Mr. MacLean or anyone else. (Preble Dep. at 79-80).

**Plaintiff's Response To The Twenty-Fourth Statement(s):** The statement is **denied**. Preble was unable to report the accident to his manager because

Richard MacLean was involved in a meeting with his New York superiors. See Exhibit 6, Preble MCAD deposition, at pages 15-16, attached to the **Affidavit Of Paul L. Nevins.**

26.    Mr. Preble had previously been in an accident in 2001 in which the TDI truck's mirror was struck by another car, and his passenger at the time, another TDI employee, wrote a report of the incident. (Preble Dep. at 81).  Mr. MacLean had previously instructed employees, including Mr. Preble, to write up a report if they were involved in an accident. (Preble Dep. at 84-85).

**Plaintiff's Response To The Twenty-Fourth Statement(s):** The statement is admitted: Walter Preble was not at fault in the accident as defendant concedes.

27.    On December 12, 2002, Mr. Preble informed Mr. MacLean that he had hit a parked car a day earlier. Mr. MacLean told Mr. Preble to write a report regarding the incident. (Preble Dep. at 88).

**Plaintiff's Response To The Twenty-Seventh Statement(s):** The statement is admitted.

28.    On December 12, 2001, Mr. MacLean terminated Mr. Preble, telling him that he had once again been off his route, and that he was being terminated for the "unauthorized use of a company vehicle."(Preble Dep. at 911-93; Fogell Aff.,¶ 10, Exh. B).

**Plaintiff's Response To The Twenty-Eighth Statement(s):** The statement is admitted.

29.    On December 12, 2001, Mr. Preble telephoned Union Business Representative Charles Fogell and informed him that he had been terminated. (Preble Dep. at 108, Fogell  Aff., ¶10, Exh. B.). Mr. Preble explained to Mr. Fogell what had happened, and Mr. Fogell asked him questions to get a better idea as to what transpired. (Fogell Dep. at 22).

**Plaintiff's Response To The Twenty-Ninth Statement(s):** The statement is admitted.

30.    Mr. Fogell told Mr. Preble to check the distance between the MBTA "barn" at which he had been working on December 11, 2003 and his home. (Preble Dep. at 109).

**Plaintiff's Response To The Thirtieth Statement(s):** The statement is admitted.

31.    On or about December 13, 2004, Mr. Preble met with Mr. Fogell at the Union office. Mr. Preble brought the information concerning the mileage distance between the MBTA barn and his house, and they discussed the circumstances that led to Mr. Preble's termination. (Preble Dep. at 109-110).

**Plaintiff's Response To The Thirty-First Statement(s):** The statement is admitted.

33.    On or about December 17, 2004, Mr. Fogell filed a grievance over Mr. Preble's discharge pursuant to Article 9, Section of the collective bargaining agreement. (Fogell Aff., ¶ 11 Exh. C).

13

**Plaintiff's Response To The Thirty-Second Statement(s):** The statement is admitted.

33.    On December 19, 2004, Mr. Fogell met with Mr. MacLean at the Step One grievance meeting. (Fogell Dep. at 30; Fogell  Aff., ¶¶ 12-13). At the meeting Mr. MacLean told Mr. Fogell that Mr. Preble had previously been suspended in February 2001 for a "road rage" incident; that Mr. MacLean had explained to the bargaining unit employee in August 2001 that they were not to go off their routes and that doing so was cause for dismissal; and that Mr. MacLean had spoken directly with Mr. Preble about the need to take lunch with his fellow employees and not to go off on his own. (Fogell Dep. at 31).

**Plaintiff's Response To The Thirty-Three Statement(s):** The statement is admitted. Fogell merely listened to MacLean who did almost all of the talking, and offered no defense whatsoever. See also Exhibits 6 and 7  attached to the **Affidavit Of Paul L. Nevins In Response To The Defendant Union's Motion For Summary Judgment**,  the notes of that Step I grievance hearing, taken by Fogell and MacLean.

34.    During the Step One grievance meeting, Mr. Fogell asked Mr. MacLean if there was a posted rule against taking one's truck home for lunch. While Mr. MacLean admitted that there was no such written rule, he stated that the employees had been verbally told on several occasions not to do so. (Fogell Dep. at 31; Fogell  Aff., ¶ 13).  Mr. Fogell also questioned how far off his route Mr. Preble was when he went home for lunch. (Fogell Dep. at 31; Fogell Aff, ¶

13).

**Plaintiff's Response To The Thirty-Fourth Statement(s):** The statement is admitted. Fogell merely listened to MacLean who did almost all of the talking, and offered no defense whatsoever. See also Exhibits 6 and 7  attached to the **Affidavit Of Paul L. Nevins In Response To The Defendant Union's Motion For Summary Judgment**,  the notes of that Step I grievance hearing, taken by Fogell and MacLean.

**The Plaintiff's Evidentiary Objection To The Thirty-Fourth Statement(s):**[7] Fed. R .Civ.P. 56(e) provides, in relevant part, that "Supporting and opposing affidavits...shall set forth such facts as would be admissible in evidence..." The defendant's **Statement(s) Number 34** must be stricken because it is irrelevant evidence under Fed. Rule Evid. 402. The evidence shows that no written rule was ever promulgated by the company, or negotiated with the union, about where employees could go for lunch or how they could get to lunch, nor were employees paid by the company during their lunch break. See Exhibit 5 to the **Affidavit Of Paul L. Nevins, Deposition of Richard MacLean**, at pages 30-34. Further, there is no evidence that the plaintiff had ever received a written warning or suspension, prior to his discharge, for having eaten his lunch at home when he worked in the vicinity of his house.

35.    At the conclusion of the Step One grievance meeting, which lasted

---

7.    See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

between forty-five minutes to an hour, Mr. Fogell requested all documents in Mr. Preble's personnel file. Mr. MacLean sent the requested documents to Mr. Fogell on or about December 20, 2004. (Fogell Aff.,¶ 14). Mr. MacLean refused to change his position regarding the termination of Mr. Preble. (Fogell Aff., ¶ 14).

**Plaintiff's Response To The Thirty-Fourth Statement(s):** The statement is admitted.

36.    On or about December 26, 2001, Mr. Fogell advanced Mr. Preble's grievance to Step Two of the grievance procedure, pursuant to Article 9, Section 9.2 (a) of the collective bargaining agreement. (Fogell  Aff., ¶ 15, Exh. D).

**Plaintiff's Response To The Thirty-Fourth Statement(s):** The statement is admitted.

37.    On or about December 27, 2004, Mr. Fogell interviewed Union steward Kenneth Barrus, who had worked with Mr. Treble on several occasions, including on Mr. Preble's last day of employment. Mr. Fogell spoke with Mr. Barrus and inquired as to whether Mr. MacLean had held any meetings concerning off route, as Mr. MacLean had claimed in the Step One Grievance meeting. (Fogell Dep. at 38-39; Fogell  Aff.,¶16). Mr. Barrus confirmed that Mr. MacLean had on several occasion instructed the employees that they were not to go off route, and were not to take the truck home for lunch. (Fogell Dep. at 38-39; Fogell Aff., ¶ 16).

**Plaintiff's Response To The Thirty-Seventh Statement(s):** The statement is admitted.

**The Plaintiff's Evidentiary Objection To The Thirty-Seventh Statement(s):**[8] Fed. R .Civ.P. 56(e) provides, in relevant part, that "Supporting and opposing affidavits...shall set forth such facts as would be admissible in evidence..." The defendant's **Statement(s) Number 37** must be stricken because it is irrelevant evidence under Fed. Rule Evid. 402. The evidence shows that no written rule was ever promulgated by the company, or negotiated with the union, about where employees could go for lunch or how they could get to lunch, nor were employees paid by the company during their lunch break. See Exhibit 5 to the **Affidavit Of Paul L. Nevins, Deposition of Richard MacLean**, at pages 30-34. Further, there is no evidence that the plaintiff had ever received a written warning or suspension, prior to his discharge, for having eaten his lunch at home when he worked in the vicinity of his house.

38.    Mr. Fogell's investigation of the grievance also involved speaking with bargaining unit employee Joseph Maykis regarding whether Mr. MacLean had held any employee meetings in which he had warned the employees about taking their trucks off route. (Fogell Off.¶17). Mr. Maykis confirmed that these meetings occurred and that Mr. MacLean had made such statements. (Fogell

---

8.    See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

Dept. at 41, Fogell  Aff.,¶17.

**Plaintiff's Response To The Thirty-Eighth Statement(s):** The statement is admitted.

**The Plaintiff's Evidentiary Objection To The Thirty-Eighth Statement(s):**[9]

Fed. R .Civ.P. 56(e) provides, in relevant part, that "Supporting and opposing affidavits...shall set forth such facts as would be admissible in evidence..." The defendant's **Statement(s) Number 38** must be stricken because it is irrelevant evidence under Fed. Rule Evid. 402. The evidence shows that no written rule was ever promulgated by the company, or negotiated with the union, about where employees could go for lunch or how they could get to lunch, nor were employees paid by the company during their lunch break. See Exhibit 5 to the **Affidavit Of Paul L. Nevins, Deposition of Richard MacLean**, at pages 30-34. Further, there is no evidence that the plaintiff had ever received a written warning or suspension, prior to his discharge, for having eaten his lunch at home when he worked in the vicinity of his house.

39.    On December 28, 2004, Mr. Fogell and Mr. Preble attended a Step Two grievance meeting with Mr. MacLean and William Murphy, TDI's Vice - President of Operations (Fogell Dep. at 42-43; Fogell Off., ¶18). Prior to the meeting, Mr. Fogell and Mr. Preble again met to prepare for the grievance meeting. (Fogell Dep. at 42, Fogell Aff., ¶ 18).

---

9.    See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

18

**Plaintiff's Response To The Thirty-Ninth Statement(s):** The statement is admitted.

40.    At the Step Two grievance meeting, the Company stated that Mr. Preble had been warned on numerous occasions about going off route; had been warned about staying with his co-workers rather than going off on his own during lunch; had been warned about going home for lunch after he locked his keys in the Company truck outside his house; had been suspended for following an MBTA worker to his home in February, 2001, an incident the Company labeled "road rage"; and finally, after taking his truck off route to go home for lunch on December 11, 2001, struck a parked vehicle on his way back from his home, waited until the next day to report the accident to anyone at TDI, and failed to provide information for an accident report concerning the struck vehicle. (Fogell Aff., ¶18).

**Plaintiff's Response To The Fortieth Statement(s):** The statement is admitted.

**The Plaintiff's Evidentiary Objection To The Fortieth Statement(s):**[10]

Fed. R .Civ.P. 56(e) provides, in relevant part, that "Supporting and opposing affidavits...shall set forth such facts as would be admissible in evidence..." The defendant's **Statement(s) Number 40** must be stricken because it is irrelevant evidence under Fed. Rule Evid. 402. The evidence shows that no written rule

---

10.    See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

was ever promulgated by the company, or negotiated with the union, about where employees could go for lunch or how they could get to lunch, nor were employees paid by the company during their lunch break. See Exhibit 5 to the **Affidavit Of Paul L. Nevins, Deposition of Richard MacLean**, at pages 30-34. Further, there is no evidence that the plaintiff had ever received a written warning or suspension, prior to his discharge, for having eaten his lunch at home when he worked in the vicinity of his house.

41.    During the Step Two grievance meeting, the Company asked Mr. Preble if he had brought in any information on the vehicle he had struck on December 11, 2001. (Fogell Dep. at 47; Fogell Off.¶19).  Mr. Preble stated that he had the information in his wallet, but when he opened up his wallet, he didn't have the information.  Mr. Preble stated that he must have forgotten the information, and then laughed. (Fogell Dep. at 47-48'; Fogell  Aff., ¶19).

**Plaintiff's Response To The Forty-First Statement(s):** The statement is **denied**. It is contradicted by Charles Fogell's contemporary notes taken at the time of the Step 2 hearing. See Exhibit 10 attached to the **Affidavit Of Paul L. Nevins In Response To The Defendant Union's Motion For Summary Judgment**.

42.    When Mr. Preble laughed about forgetting to bring the information, Mr. Murphy became upset and stated, "No, hah, hah,.hah. You are fired." Mr. Fogell then asked for a caucus, at which point Mr. Fogell and Mr. Preble went outside the room. (Fogell Dep. at 48-49; Fogell Aff.,¶ 20).

20

**Plaintiff's Response To The Forty-Second Statement(s):** The statement is **denied**. It is contradicted by Charles Fogell's contemporary notes taken at the time of the Step 2 hearing. See Exhibit 10 attached to the **Affidavit Of Paul L. Nevins In Response To The Defendant Union's Motion For Summary Judgment**.

43.   During the caucus, Mr. Fogell attempted to calm Mr. Preble down and spoke to him about giving the Union some flexibility in trying to negotiate some sort of settlement that involved reinstatement. Mr. Treble responded: "No screw them. I want full back pay and reinstatement." (Fogell Dep. at 45; Fogell Aff., ¶ 21).

**Plaintiff's Response To The Forty-Second Statement(s):** The statement is admitted: Walter Preble was entitled to reinstatement since he was discharged for a specious, pretextual reason: The violation of an illegal, non-negotiated work-rule.

44.    During the caucus, Mr. Treble told Mr. Fogell that he wanted to go to arbitration. Mr. Fogell told Mr. Treble that the Union would eventually decide whether to pursue the grievance to arbitration(Fogell Off.,¶21, and that based upon what had occurred in the Step two meeting, "it doesn't look good at all."(Fogell Dep. at 45-46).

**Plaintiff's Response To The Forty-Fourth Statement(s):** The statement is admitted.

45.    Following the Step Two grievance meeting, Mr. Fogell reviewed Mr.

Preble's record, what had occurred in the Step One and Step Two grievance meetings, and the information he gathered from his interviews with Kenny Barrus and Joseph Maykis. Mr. Fogell also discussed the case with the Union's legal counsel. (Fogell Aff.,¶22).

**Plaintiff's Response To The Forty-Second Statement(s):** The statement is admitted:

46.    In a letter dated January 2, 2002, which Mr. Preble received shortly thereafter (Treble Dep. at 116) Mr. Fogell informed Mr. Treble that the Union would not pursue his grievance to arbitration:

> Based upon the research and the Step One and Two Grievance meetings conducted by the Union. The Union has determined that no further action or processing of your termination grievance shall be conducted nor shall the matter be subjected to arbitration, due to lack of merit as disclosed at the grievance meetings.
>
> Should you disagree with the actions of District Council #35, I would suggest that you contact the Business Manager/Secretary-Treasurer Ralph   Harriman within five (5) days of your receipt of this letter.
> I have enclosed a list of D.C.#35 signatory contractors should you desire to seek  employment with any of our signatory employers. (Fogell Aff.,¶23, Exh. E).

**Plaintiff's Response To The Forty-Sixth Statement(s):** The statement is admitted.

47.   Following receipt of Mr. Fogell's January 2, 2002 letter, Mr. Preble contacted Business Manager/Secretary-Treasurer Ralph Harriman. On February 12, 2002, Mr. Harriman sent Mr. Preble a letter which Mr. Preble received shortly thereafter (Treble Dep. at 117), stating that the Union would

22

not be pursuing the case any further:

> This letter is in response to your letters dated January 4, 2002 and February 6, 2002 as well as a follow-up to our phone conversation on or about January the, 2002 regarding your termination grievance.
> I have once again reviewed the information and research attributed to the step one and step two grievance meetings conducted by this Union.
>
> It is quite apparent that your lack of adherence to company policy (private use of company vehicles) and your previous record of following a "T" employee to his home after an incident while returning to the shop, followed by a verbal confrontation with the individual, led to your termination.
> Your all or nothing position (reinstatement with full back pay) left this Union few options during the grievance process. Therefore, we must inform you that the case will not proceed to arbitration due to lack of merit as previously stated.
> As per your request, enclosed please find a copy of the District Council #35 By-laws. Fogell Aff.,¶ 24 Exh. D).

**Plaintiff's Response To The Forty-Seventh Statement(s):** The statement is admitted.

48.    While employed at TDI, Mr. Preble suffered from Type II diabetes, which required no insulin injections but did require him to monitor his blood sugar levels. (Treble Dep. at 12-13).

**Plaintiff's Response To The Forty-Eighth Statement(s):** The statement is admitted.

49.    Once per day, Mr. Preble would prick his finger, draw blood onto a test strip, and insert the strip in a small handled machine, a process that took "a minute." (Preble Dep. at 17)

**Plaintiff's Response To The Forty-Ninth Statement(s):** The statement is admitted.

50.    Mr. Preble's practice was to test his blood sugar at lunch time. (Treble Dep. at 17).

Mr. Preble could have taken the blood testing machine with him to work. (Treble Dep. at 94-95).

**Plaintiff's Response To The Fiftieth Statement(s):** The statement is **denied.**

Preble and a colleague were required to drive a company van to and from sites every day; there is no evidence that the plaintiff could have secured safely his blood-testing equipment.

**The Plaintiff's Evidentiary Objection To The Fiftieth Statement(s):**[11] Fed. R .Civ.P. 56(e) provides, in relevant part, that "Supporting and opposing affidavits...shall set forth such facts as would be admissible in evidence..." The defendant's **Statement(s) Number 50** must be stricken because it is irrelevant evidence under Fed. Rule Evid. 402 because it is an assertion which requires speculation.

51.    Preble could have brought a lunch to work that would have allowed him to meet the dietary restrictions of his diabetes.  (Preble Dep. at 107).

**Plaintiff's Response To The Fifty-First Statement(s):** The statement is **denied.** Preble has testified that his blood-sugar levels varied daily which is why he was required to test his sugar-levels.

---

11.    See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

24

**The Plaintiff's Evidentiary Objection To The Fifty-First Statement(s):**[12]

Fed. R .Civ.P. 56(e) provides, in relevant part, that "Supporting and opposing affidavits...shall set forth such facts as would be admissible in evidence..." The defendant's **Statement(s) Number 51** must be stricken because it is irrelevant evidence under Fed. Rule Evid. 402 because it is an assertion which requires speculation.

52.   Mr. Preble never told Mr. Fogell that he had diabetes, never told Mr. Fogell that he believed he had been discharged due to his age or medical condition, and never argued, nor urged Mr. Fogell to argue during the grievance process that his termination was due to his age or medical condition. (Treble Dep. 113-114; Fogell Off.,¶25).

**Plaintiff's Response To The Fifty-Second Statement(s):** The statement is admitted. There is no evidence that the plaintiff was ever asked.

53.   Mr. Preble never provided TDI or the Union with any medical documentation showing that he needed to go home for lunch due to his diabetes. (Treble Dep.114; Fogell Off.,¶26).

**Plaintiff's Response To The Fifty-Second Statement(s):** The statement is admitted. There is no evidence that the plaintiff was ever asked.

54.    Mr. Preble's diabetes did not affect his ability to perform any job, nor restrict how long he could work on any particular day. (Preble Dep.18).

---

12.    See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

25

**Plaintiff's Response To The Fifty-Fourth Statement(s):** The statement is admitted.

55.    Asked generally how his diabetes "affect (ed his) daily life" while employed at TDI, Mr. Preble responded "No too much As long as I kept my (blood sugar) numbers in check, I was fine." (Preble Dep. at 16).

**Plaintiff's Response To The Fifty-Fifth Statement(s):** The statement is admitted.

56.    As a result of a heart attack in 1997, Mr. Preble was advised "not to lift extremely...heavy items, " or to shovel snow, but otherwise has no work restrictions. (Preble Dep. at 11-12).

**Plaintiff's Response To The Fifty-Sixth Statement(s):** The statement is admitted.

57.    When Mr. MacLean learned of Mr. Preble's heart condition, Mr. MacLean told him that "whenever I had to, to take it easy, take a break, or whatever I need to do to take care of my situation." (Preble Dep. at 98).

**Plaintiff's Response To The Fifty-Seventh Statement(s):** The statement is admitted.

59.    Mr. Preble never heard Mr. Fogell make any comments about Mr. Preble's or anyone else's age, nor did Mr. Preble ever hear Mr. Fogell make comments about Mr. Preble's diabetes or heart condition, or the medical condition of any other employees. (Preble Dep.118-119). Mr Preble never told Mr. Fogell that he had diabetes. (Fogell Aff., ¶25).

26

**Plaintiff's Response To The Fifty-Ninth Statement(s):** The statement is admitted.

**The Plaintiff's Evidentiary Objection To The Fifty-Ninth Statement(s):**[13]

Fed. R. Civ.P. 56(e) provides, in relevant part, that "Supporting and opposing affidavits...shall set forth such facts as would be admissible in evidence..." The defendant's **Statement(s) Number 59** must be stricken because under Fed. Rule Evid. 402, on independent evidentiary grounds, because the statements attempt, albeit in a form disguised as evidentiary statements, improperly offer conclusions about the motives of the actors and their lack of age animus. Such testimony is improper because it suggests conclusions, from a self-serving perspective, about the ultimate issues in dispute, the resolution of which belongs solely to the jury as the finders of fact.

60.    At no point during the grievance process did Mr. Preble tell anyone in the Union, or at TDI, that he thought the Company had discriminated against him. (Preble Dep. at 114).

**Plaintiff's Response To The Sixtieth Statement(s):** The statement is admitted.

61.    Mr. Preble does not have any reason to believe that Mr. Fogell is biased against older workers or employees with disabilities and/or medical conditions. (Preble Dep. at 119).

---

13.    See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

27

**Plaintiff's Response To The Sixty-First Statement(s):** The statement is **denied** based upon all of the circumstantial evidence.

**The Plaintiff's Evidentiary Objection To The Sixty-First Statement(s):**[14]

Fed. R .Civ.P. 56(e) provides, in relevant part, that "Supporting and opposing affidavits...shall set forth such facts as would be admissible in evidence..." The defendant's **Statement(s) Number 61** must be stricken because under Fed. Rule Evid. 402, on independent evidentiary grounds, because the statements attempt, albeit in a form disguised as evidentiary statements, improperly offer conclusions about the motives of the actors and their lack of age animus. Such testimony is improper because it suggests conclusions, from a self-serving perspective, about the ultimate issues in dispute, the resolution of which belongs solely to the jury as the finders of fact.

62.    Although Kenneth Barrus is the Union's steward at TDI, he has very limited responsibilities as steward.  Those responsibilities consist almost exclusively of answering bargaining unit employees' basic questions about the collective bargaining agreement.  (Fogell Dep. at 57-58; Fogell Aff., P 27).  Mr. Barrus does not investigate grievances and had no role in the Union's investigation of Mr. Preble's grievance.  He also had no involvement in the Union's decision not to pursue Mr. Preble's grievance to arbitration.  (Fogell Dep. at 58-59; Fogell Aff., at ¶ 27).

---

14.    See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

**Plaintiff's Response To The Sixty-Second Statement(s):** The statement is **denied .**See Exhibits 8 and 9  attached to the **Affidavit Of Paul L. Nevins In Response To The Defendant Union's Motion For Summary Judgment**, Mr. Barrus' statements to MacLean and to Fogell which shows that he actively "poisoned the well" against Mr. Preble and actively  played the role of a toady and a company-informant.

63.    Union business Representative Charles Fogell has the authority to decide whether or not to pursue a grievance to arbitration.  (Fogell Dep at 14; Fogell Aff., at ¶ 28).  If a union member protests such decision, however, then Business Manager/Secretary-Treasurer Ralph Harriman has final authority to overturn a Business Representative's decision.  (Fogell Dep. at 14-15; Fogell Aff., ¶ 28).

**Plaintiff's Response To The Sixty-Third Statement(s):**  The statement is admitted.

64.    Following the Union' s final notification that it would not be pursuing his grievance to arbitration, Mr. Preble filed charges with the Massachusetts Commission Against Discrimination against both Painters and Allied Trades District Council No. 35 and TDI on May 17, 2002, alleging discrimination on the basis of age and disability. (Conti Aff., P.4, Exh. 3).

**Plaintiff's Response To The Sixty-Fourth Statement(s):** The statement is admitted.

65.    On March 27, 2004, Mr. Preble withdrew his cases with the

29

Massachusetts Commission Against Discrimination to pursue a private right of action against the Union and TDI (Conti Off., ¶ 4, Exh .3).

**Plaintiff's Response To The Sixty-Fifth Statement(s):** The statement is admitted.

66.    On April 7, 2004, the Plaintiff  filed a Complaint in Suffolk Superior Court alleging that the Union violated Massachusetts General Laws c. 151B, ss 4, age discrimination, M.G.L. c. 151B ss 4.2 and 4.16, disability discrimination; and M.G.L. c. 151B, §§ 4.4A, and unlawful retaliation for exercise of statutory rights under c. 151B.  Plaintiff also filed suit against TDI claiming that it discriminated against him on the basis of his age and alleged disability when it terminated his employment on December 12, 2001.

**Plaintiff's Response To The Sixty-Sixth Statement(s):** The statement is admitted.

67.    Painters and Allied Trades District Council No. 35 successfully removed Plaintiff's Complaint to the United States District Court for the District of Massachusetts.

**The Plaintiff's Evidentiary Objection To The Sixty-Seventh Statement(s):**[15] Fed. R .Civ.P. 56(e) provides, in relevant part, that "Supporting and opposing affidavits...shall set forth such facts as would be admissible in evidence..." The defendant's **Statement(s) Number 67** must be

---

15.    See the **Plaintiff's Cross-Motion To Strike The Defendants' Statement of Undisputed Facts.**

30

stricken because under Fed. Rule Evid. 402, on independent evidentiary

grounds, because the statement is a legal proposition which the plaintiff does

not concede is correct as a matter of law. See the plaintiff's legal memorandum

which accompanies this response.

Respectfully submitted,

WALTER S. PREBLE

By his attorney,

/s/ Paul L. Nevins

Paul L. Nevins
BBO # 369930
47 Church Street
Wellesley, MA 02482
(781) 237-9018

**Certificate of Service**

The undersigned hereby certifies that, on January 14, 2005, he served a true copy of the foregoing upon all parties by causing it to be sent electronically and, via first class mail, postage prepaid, to:

Michael A. Feinberg, Esquire
Jonathan M. Conti, Esquire
**Feinberg, Campbell & Zack, P.C.**
177 Milk Street
Boston, MA 02109

and:

Mark W. Batten, Esquire
**Proskauer Rose LLP**
One International Place
Boston, MA 02110

_____/s/ Paul L. Nevins_____
Paul L. Nevins