UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE
2005 JAN 28 P 1: 12
U.S. DISTRICT COURT
DISTRICT OF MASS

| | |
|---|---|
| WALTER S. PREBLE,  )<br>  )<br>      Plaintiff,  )<br>  )<br>v.  )<br>  )<br>TRANSPORTATION DISPLAYS,  )<br>INCORPORATED, dba  )<br>VIACOM OUTDOOR, and  )<br>PAINTERS AND ALLIED  )<br>TRADES DISTRICT COUNCIL 35,  )<br>IUPAT, AFL-CIO,  )<br>  )<br>      Defendants.  )<br> | C.A. No. 04-cv-11005 RWZ |

### DEFENDANT PAINTERS AND ALLIED TRADES DISTRICT COUNCIL NO. 35'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION TO STRIKE DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

Defendant Painters and Allied Trades District Council No. 35 ("Union") respectfully opposes Plaintiff Walter Preble's Cross-Motion to Strike certain paragraphs of Defendant Union's Statement of Undisputed Facts. Mr. Preble's objections to paragraphs 11, 12, 13, 14, 22, 25, 34, 37, 38, 40, 41, 47, 50, 51, 59, 61, 62, and 67 must be dismissed, as the facts contained therein are relevant, admissible, and undisputed.

I.   **Evidence Regarding Prior Warnings and Past Behavior, as Stated in Paragraphs 11, 12, 13, 14, and 22 of Defendant Union's Statement of Facts, are Relevant and Admissible.**

Walter Preble first objects to paragraph 11 of Defendant Union's Statement of Facts, which concerns prior warnings he received about going home for lunch with a Company vehicle. It is undisputed that Preble's supervisor, Richard MacLean, informed bargaining unit employees on several occasions that employees were not to drive TDI

vehicles off route. (Defendant's Statement of Undisputed Facts, ¶ 11). This evidences that Preble was on notice that employees were not to take Company vehicles off route and home for lunch, and that he still chose to disregard those warnings. Since Preble was terminated for unauthorized use of a Company vehicle, prior warnings regarding use of Company vehicles is relevant.

Preble consistently states throughout his Motion to Strike that there was "no written rule . . . ever promulgated by the company, or negotiated with the union, about where employees could go for lunch or how they could get to lunch, nor were employees paid by the company during their lunch break," as a reason for denying the admission of evidence concerning his having gone off route by going home on December 11, 2001. (Opposition to Statement of Facts, ¶ 22).

First, the unauthorized use of a TDI vehicle on December 11, 2001, was the event that led to his discharge. Second, the fact that there is no specific rule against going off route and going home does not mean that it was permitted behavior. Preble cannot attempt to suppress the introduction of evidence that constituted the major reason for TDI's decision to discharge him by attacking the weight of the evidence, i.e., that the rule was not a written one. Furthermore, the parties' collective bargaining agreement states that "[t]hese rules are not intended to cover every circumstance under which discipline, up to and including discharge, may be appropriate." (Fogell Aff., ¶ 4, Exh. A). The list of work rules in the collective bargaining agreement is therefore not exclusive. In any event, there are no written rules against fighting or stealing from the company, but that does not mean that those are not disciplinary offenses.

Preble likewise seeks to prohibit the introduction of evidence concerning his past incidents at TDI involving the use of a company vehicle. (Opposition to Statement of Facts, ¶¶ 12-14). Evidence that Preble was involved in an accident in October 2000, that a police officer visited the garage that evening, and that MacLean termed the incident one of "road rage" and told Preble that he could be terminated for a similar incident in the future, is relevant and admissible since it is behavior similar to that which occurred in February 2001, when he was suspended. That February 2001 suspension was part of Preble's disciplinary record, and that record was a factor in the Company's later decision to terminate him.

## II.     Evidence Concerning the Union's Investigation of Preble's Grievance, as Noted in Paragraphs 34, 37, 38, and 40, is Relevant and Admissible.

Preble uses the same basic objections (there was no specific written rule that Preble violated, and there was no written warning or suspension for the conduct for which he was discharged), in trying to prohibit the introduction of evidence pertaining to Union Business Representative Charles Fogell's investigation of Preble's grievance. The gravamen of Preble's complaint against the Union is that it did not fairly represent him during the grievance process. Testimony from Fogell as to what was discussed in the first grievance meeting (attended only by Fogell and MacLean), what occurred at the second grievance meeting, and what Fogell did to investigate the grievance (such as questioning bargaining unit employees Kenneth Barrus and Joseph Maykis), is relevant to the determination of whether the Union's decision not to take Preble's grievance to arbitration, and its representation of Preble throughout the grievance process, was arbitrary, discriminatory, or in bad faith. Whether the Union violated its duty of fair

representation is the principal issue in this case, so such evidence is relevant and admissible.

III. **Fogell's Deposition Testimony Concerning Preble's Behavior at the Step Two Grievance Meeting is Not Contradicted by his Notes from the Meeting.**

Preble objects to Fogell's testimony concerning what occurred at the Step Two grievance meeting, specifically Fogell's testimony about Preble's failure to provide the Company with insurance information regarding his December 2001 accident. (Opposition to Statement of Facts, ¶ 41). Preble claims that this testimony is contradicted by Fogell's contemporaneous notes from the Step Two grievance meeting, but this assertion is baseless. Fogell's notes clearly reflect that there was a discussion during the meeting about the information Preble failed to provide concerning the accident, and that he laughed in the face of one of the Company's supervisors. (Nevins Aff., ¶ 12, Exh. 11). Furthermore, Preble's counsel had an opportunity to question Fogell as to this alleged contradiction during Fogell's deposition.

IV. **Evidence Concerning the Existence of a Disability is Relevant and Admissible.**

In his response to Defendant Union's statement in paragraph 50 of its Statement of Undisputed Facts, Preble asserts that evidence establishing that Preble could have taken his blood testing machine with him to work should not be admitted because it is speculative. This objection is without merit. When Preble was asked, "could you have taken the blood testing machine in the truck with you," he admitted, "I could have." (Preble Dep. pp. 94-95). Likewise, in response to the question, "would it be possible for you to bring a lunch to work that would have met the diabetes restrictions you had?", Preble answered, "Yes." (Preble Dep. 107).

There is no speculation. The blood testing device is a handheld item with which Preble is familiar, and he clearly admitted that he could have taken it with him in his truck. Likewise, Preble stated that his diabetic condition did not prevent him from bringing a lunch to work. As part of Preble's claim appears to be that he needed an accommodation- being allowed to go home for lunch- direct evidence contradicting this claim is surely relevant, especially considering that Plaintiff never asked for an accommodation.

V.  **Preble's Lack of Direct Evidence of Union Animus or Bias is Relevant.**

Preble admits that he never heard Fogell make any comments about Preble's, or anyone else's, age or medical condition, and that he never disclosed to Fogell that he had diabetes. (Preble Dep. at 118-119; Fogell Aff., ¶ 25). Preble now seeks to strike these statements because, he claims, they offer conclusions about the motives of actors and their lack of animus. The Union is entitled to present this direct evidence regarding the lack of animus, however, to rebut Preble's assertions that the Union refused to take Preble's grievance to arbitration, or did not adequately represent him, on the basis of either his age or alleged disability/medical condition. Preble admits that he never heard Fogell make any such comments. While Preble is free to present circumstantial evidence establishing such animus, he cannot limit the Defendant's introduction of direct evidence offered to refute his claims.

VI. **Kenneth Barrus' Responsibilities as Union Steward are Relevant and Admissible.**

Preble denies the Union's statement in paragraph 61 that Union Steward Kenneth Barrus has very limited responsibilities as steward. Fogell testified, however, that Barrus' duties consist almost exclusively of answering bargaining unit employees' basic

questions about the collective bargaining agreement, and that he has no role in investigating grievances. (Fogell Dep. at 57-58; Fogell Aff., ¶ 27). Fogell also testified that Barrus had no role in the investigation of Preble's grievance, and was not involved in the decision not to take Preble's grievance to arbitration. (Fogell Dep. at 58-59; Fogell Aff., ¶ 27). In denying this statement, Preble offers no conflicting evidence, but merely asserts that Barrus was a "toady" and "company- informant" who "poisoned the well." (Preble Opposition, ¶ 62). Such statements regarding Preble's opinion of Barrus' personality are not sufficient to strike the evidence set forth in paragraph 61.

## VI. Conclusion

Preble's objections to Defendant Union's Statement of Undisputed Facts almost exclusively address the weight to be given, rather than the admissibility of the evidence, despite Preble's attempts to portray them as the latter. Preble is free to argue as to the amount of weight to be given certain undisputed facts, but he cannot prevent the admission of such evidence under such a theory. Therefore, for all of the foregoing reasons, Plaintiff's Cross-Motion to Strike portions of Defendant Union's Statement of Undisputed Facts should be denied.

Respectfully submitted,

Defendant Painters and Allied Trades
District Council No. 35
By its Attorneys,

Jonathan M. Conti (BBO # 657163)
FEINBERG, CAMPBELL & ZACK, P.C.
177 Milk Street
Boston, MA 02109
(617) 338-1976

Dated this 27th day of January, 2005.