UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2005 JAN 28 P 1: 12
U.S. DISTRICT COURT
DISTRICT OF MASS.

WALTER S. PREBLE,

Plaintiff,

v.

TRANSPORTATION DISPLAYS, INCORPORATED, dba VIACOM OUTDOOR, and PAINTERS AND ALLIED TRADES DISTRICT COUNCIL 35, IUPAT, AFL-CIO,

Defendants.

C.A. No. 04-cv-11005 RWZ

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT PAINTERS AND ALLIED TRADES DISTRICT COUNCIL NO. 35'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Walter Preble's Opposition to Defendant Painters and Allied Trades District Council No. 35's Motion for Summary Judgment provides no evidence that would establish that any material issues of fact are in dispute. Plaintiff spends an inordinate amount of time pontificating on the standard of summary judgment, with multiple case citations to procedural holdings, but spends very little time presenting any evidence whatsoever to create a material issue of fact that would support his bald assertions that Defendant Union discriminated against him on the basis of his age and/or disability, when it decided not to take his grievance to arbitration.

As Plaintiff fails to set forth any credible evidence or, in some instances, fails to even address Defendant's arguments, Defendant's Motion for Summary Judgment should be granted in its entirety because Plaintiff's claim is federal preempted and therefore

barred by the statute of limitations, and because Plaintiff can present no evidence whatsoever that Defendant declined to take his grievance to arbitration for arbitrary or discriminatory reasons on the basis of his age or alleged disability.

## I. Plaintiff's State Law Discrimination Claims are Preempted by the Labor Management Relations Act.

While the question of whether a state law claim is preempted by Section 301 of the Labor Management Relations Act depends upon whether resolution of the dispute hinges upon interpretation of the collective bargaining agreement[1], Plaintiff simply ignores the fact that the collective bargaining agreement between Transportation Displays, Inc., ("TDI") and the Union contains several provisions upon which the dispute hinges.

As explained in Defendant Union's initial Memorandum in Support of its Motion for Summary Judgment, Preble's claim is based entirely upon the collective bargaining agreement. Article 8, Section 8.3 of the agreement provides that no employee may be disciplined without just cause, while Article 9, Section 9.2 specifically prohibits both TDI and the Union from discriminating against an employee on the basis of numerous factors, including age or disability. (Fogell Aff., ¶ 4, Exh. A).

Preble's argument, essentially, is that the Company did not have just cause to discharge him, and that it therefore must have done so for discriminatory reasons. Since there was no just cause, the Union violated its duty not to discriminate against him by refusing to take his grievance to arbitration, according to Preble. Thus, in order to resolve the Union's alleged wrongdoing- its failure to take Preble's grievance to arbitration based upon his age and disability- the Court must examine and interpret the

1 *Fant v. New England Power Service Co.*, 239 F.3d 8, 15 (1st Cir. 2001).

grievance provision, the just cause article, and the article prohibiting discrimination by both TDI and the Union. See: *Wilhelm v. Sunrise Northeast, Inc.*, 923 F.Supp. 330 (D.Conn. 1995) (alleged state law discrimination claim preempted by Section 301 where collective bargaining agreement had a "just cause" for discharge provision and a grievance and arbitration procedure).

## II. Plaintiff Does Not Address the Issue of Federal Preemption Under the National Labor Relations Act.

Even if the Court agrees with the Plaintiff that Section 301 preemption is not proper here, the Plaintiff's state law discrimination claims are still preempted by the duty of fair representation derived from Sections 9(a) and 8(b) of the National Labor Relations Act, 29 U.S.C. §159(a) and §158 (b).

Preble claims that the Union did not prepare him for the grievance procedure, failed to present a defense on his behalf, and refused to take the Plaintiff's grievance to arbitration based upon discriminatory reasons. (Complaint, ¶¶ 32-34). A union has a statutory duty under the National Labor Relations Act to fairly represent its members without favoritism, prejudice, or other discrimination. *Lemerich v. Int'l Union of Operating Engineers, Locals 877 and 4,* 2002 U.S. Dist. LEXIS 7102 (D. Me.) (April 19, 2002) at [*19]. Thus, if the underlying substance of the plaintiff's claim for discrimination is that the union breached this duty of fair representation by discriminating against the plaintiff, then the state law claims create no new rights and are subsumed and preempted by the duty of fair representation under the National Labor Relations Act. *Id.* As explained more fully in Defendant Union's initial Memorandum, numerous courts have similarly ruled that the federal duty of fair representation under the NLRA preempts state-law based discrimination claims. See: *Thomas v. National Association of Letter*

*Carriers*, 225 F.3d 1149 (10th Cir. 2000); *Snay v. U.S. Postal Service*, 31 F.Supp.2d 92 (N.D.N.Y. 1998); *Cahoon v. International Brotherhood of Electrical Workers Local 261*, 175 F.Supp.2d 220 (D.Conn. 2001); *Rodolico v. Unisys Corporation*, 96 F. Supp.2d 184 (E.D.N.Y. 2000); *Madison v. Motion Picture Set Painters and Sign Writers Local 729*, 132 F. Supp.2d 1244 (C.D. Cal. 2000).

Nonetheless, Plaintiff chooses to counter this preemption argument, and the numerous examples of relevant case law addressing this same issue, by remaining silent. Silence cannot mask the fact that the Plaintiff's claims are federally preempted by the federal duty of fair representation, however. Consequently, Preble's claims are barred by the six-month statute of limitations. *Madison v. Motion Picture Set Painters and Sign Writers Local 729*, 132 F. Supp.2d 1244 (C.D. Cal. 2000); *Cantrell v. International Brotherhood of Electrical Workers, Local 2021*, 32 F.3d 465, 467 (10th Cir. 1994).

**III. Plaintiff is Not a "Qualified Handicapped Individual".**

Even assuming that Plaintiff's claims are not federally preempted, Plaintiff cannot establish that he is a "qualified handicapped individual," pursuant to Massachusetts General Laws, chapter 151B. Preble has presented no evidence that he has an impairment "which substantially limits one or more major life activities." M.G.L. c. 151B, § 1(17).

Preble asserts that he has a "heart condition" and diabetes, but he testified that neither condition affects his ability to perform the requirements of his job, nor restricts the amount of time he can work in a day. (Preble Dep. at 18). The only restriction Preble asserts is that he is not able to lift heavy items or shovel snow. (Preble Dep. at 11-12).

In his Opposition to Defendant Union's Motion for Summary Judgment, Preble makes broad, sweeping assertions that the "existing documentary record shows that Mr. Preble was a "qualified handicapped person" who was "capable of performing the essential functions of his position with . . . reasonable accommodation." (Preble Opposition, p. 11). Preble not only does not put forth any actual evidence that he is disabled under Massachusetts law, but there is also no evidence that Preble needed any kind of accommodation to perform his job. Apparently, Preble is now claming that he should have been allowed to eat lunch at home due to his diabetes. It is undisputed, however, that Preble's diabetes, as well as his heart condition, did not affect his ability to perform his job as a billposter in any way. In addition, it is also undisputed that Preble never asked for an accommodation. While Preble asserts that TDI and Fogell were aware of his heart condition,[2] this is not sufficient evidence that he ever requested an accommodation. Preble never asked to go home for lunch; he admitted that he could take his blood testing machine with him to work; and he testified that he could have brought a lunch with him to work that would have met his dietary restrictions. (Preble Dep. at 94-95, 107). Preble's alleged need for an accommodation did not arise until he filed this lawsuit.

---

[2] Fogell testified that he "wasn't really aware that [Preble] had a heart condition," but "had heard that he had had a heart attack, and, actually, in one of my [post-termination] conversations with him, he did say, 'well, I have a heart condition.'" (Fogell Dep. at 29). Fogell also testified that he was not aware that Preble had diabetes (Fogell Dep. at 29). In addition, Preble never told Fogell that he had diabetes, never told him that he believed he had been discharged due to his age or medical condition, and never urged Fogell to argue during the grievance process that the termination was due to his age or medical condition. (Preble Dep. at 113-114; Fogell Aff., ¶ 25).

## IV. The Union's Decision Not to Process Preble's Grievance to Arbitration Was Not Arbitrary, Discriminatory, or in Bad Faith.

Preble's theory for why TDI did not have just cause to terminate him is that there was no written rule that prohibited an employee from taking a Company vehicle home for lunch.

First, Exhibit B of the collective bargaining agreement, which lists four specific work rules (pertaining to tardiness, absenteeism, no call/no show, and possession and consumption of alcohol or drugs), also contains the following qualification:

> These rules are not intended to cover every circumstance under which discipline, up to and including discharge, may be appropriate. (Fogell Aff., ¶ 4, Exh. A).

This language clearly provides that the Company may discharge an employee for reasons other than those listed in the rules section of the collective bargaining agreement:

> Some agreements enumerate specific grounds for discharge or discipline. It has been ruled that the fact that an agreement specifies certain types of misconduct for which employees may be discharged does not mean that causes not expressly stated may not be used where the grounds enumerated are merely illustrative and not exclusive. Similarly, the listing of certain offenses in written plant rules does not necessarily exclude other offenses as grounds for punishment. *Elkouri & Elkouri,* How Arbitration Works (5th ed. 1997), at 887-888.

If one takes Preble's argument a step further, it would mean that he could not be disciplined for theft of company property, or for punching a supervisor, for example, because the collective bargaining agreement does not specifically prohibit such transgressions. (Fogell Aff., ¶ 4, Exh. A). Furthermore, the evidence establishes that the Company verbally notified all employees, including Preble, on numerous occasions that they were not to take TDI's vehicles home. (Fogell Dep. at 31; Fogell Aff., ¶ 13). Preble did not like this rule, however, so he ignored it, and when the Company terminated him following the latest incident in a long line of transgressions, and the Union decided not to

arbitrate his grievance, he claimed that the discharge and refusal to go to arbitration must have been due to his age (because he is the second most senior billposter), and/or his alleged disabilities (despite the fact that neither condition limited his ability to perform his job in any way whatsoever).

The evidence establishes, however, that Union Business Representative Charles Fogell conducted a thorough investigation into the matter, which revealed that Preble had been warned several times about going off route and home for lunch, and that he had been disciplined several months earlier for an incident of "road rage." In addition, at the Step 2 grievance meeting, Preble laughed in the face of a supervisor, and never provided relevant information concerning the accident to his supervisors, instead taking a cavalier attitude at the meeting, claiming that he "forgot it." (Fogell Dep. at 47-48; Fogell Aff., ¶ 19). Preble also refused to allow Fogell to attempt to settle the matter, insisting that they go to arbitration short of an agreement from the Company that he would be reinstated with full back pay. (Fogell Dep. at 45; Fogell Aff., ¶ 21). Based upon these factors, and after conferring with legal counsel, Fogell decided not to take the grievance to arbitration because he believed that the Union would not be successful.

Incredibly, Preble now characterizes his refusal to abide by the unwritten, but clearly enunciated rule as an "insist[ence] that the union and employer religiously adhere to the obligations of the contract." (Preble Opposition, p. 17, n. 38). Preble's attempt to mischaracterize his disregard of the work rules and his supervisor's instructions as some kind of crusade for contract adherence and promotion of worker's rights, is disingenuous at best.

Preble now also asserts, for the first time, that the Union failed to file an unfair labor practice charge alleging that the Company unilaterally implemented the rule against taking TDI vehicles off route to go home for lunch, and that this somehow invalidates the reason for his discharge. Preble presents no evidence to show that he ever raised this issue with the Union, however, or that he protested the new rule in any way, other than by refusing to abide by it. Second, the fact that the Union did not object to this rule is not dispositive that it breached its duty of fair representation. The Union was not obligated to file a charge over the adoption of a relatively minor work rule. In any event, there is no evidence that the failure to file a unfair labor practice charge (assuming there was even any merit to such a charge), was made in bad faith.

Furthermore, evidently everyone but Preble had no trouble remaining on route to eat their lunch, and since Preble admits that he never asked to go home for lunch; could have brought a lunch and his handheld diabetes testing equipment with him to work; and never requested any type of accommodation for his alleged disability, he cannot now claim that he needed to go home for lunch as a result of his heart condition or diabetes.

There is no evidence whatsoever that the Union did not take his grievance to arbitration on account of Preble's age or alleged disability. Merely asserting that he was the second most senior bargaining unit employee, and that he has a heart condition and diabetes, does not establish that the Union discriminated against Preble. The Union's decision was arrived at only after Fogell conducted an exhaustive investigation of the circumstances surrounding the discharge; reviewed Preble's disciplinary history; corroborated the Company's version of events regarding previous warnings by interviewing fellow bargaining unit employees; and took into consideration Preble' all or

nothing demands in terms of remedy. Preble has not presented any evidence that even suggests that the Union's proffered reasons for not taking the grievance to arbitration were based upon Preble's age or alleged disability.

Moreover, Preble's claim that Fogell failed to properly prepare him for the grievance meeting is patently false. It is undisputed that Fogell spoke with Preble on the telephone after he was terminated; met with Preble in person on December 13; and met with Preble on the morning of the Step 2 grievance meeting prior to the meeting's commencement. (Preble Dep. at 22, 109-110; Fogell Dep. at 42; Fogell Aff., ¶ 18).

Lastly, Preble's statement that Fogell remained "mute" and did not represent him during the grievance meeting, is baseless. At the Step One grievance meeting, which Preble did not attend, Fogell argued that the rule was not a written rule, and inquired as to how far off his route Preble allegedly was. (Fogell Dep. at 31; Fogell Aff., ¶ 13). Fogell also gathered information from MacLean, who told him that he had warned bargaining unit employees, including Preble, that they were not to go off route to go home for lunch. Fogell later investigated MacLean's claims by asking bargaining unit members Kenneth Barrus and Joseph Maykis whether MacLean's comments regarding multiple warnings were true, which Barrus and Maykis confirmed.[3] (Fogell Dep. at 31, 38-39; Fogell Aff., ¶¶ 13-17).

---

[3] Preble claims that Barrus, the Union steward, viewed him as a "recalcitrant curmudgeon who, as a senior older union member, would continue to insist that the union and the employer religiously adhere to the obligations of the contract." (Preble Opposition, p. 17). Regardless of Preble's opinion of Barrus' personality, it cannot be disputed that Barrus does not investigate grievances, has no role as union steward in deciding whether to process a grievance to arbitration, and consequently, had no involvement in the investigation of Preble's grievance, or the decision to ultimately drop Preble's grievance. (Fogell Dep. at 57-58; Fogell Aff., ¶ 27). The only involvement Barrus had was being interviewed by Fogell as to whether he had ever heard MacLean or anyone else from the Company warn the bargaining unit about going off route and going home for lunch with a TDI vehicle. (Fogell Dep. at 38-39; Fogell Aff., ¶ 16).

Thus, it is clear that Fogell provided Preble with a vigorous defense, and only dropped the grievance after assessing all of the information before him.

## V. There is No Evidence that the Union Treated Preble Differently from Other Bargaining Unit Employees.

Plaintiff asserts, as part of his *prima facie* case, that he has shown that he was a member of one or more protected classes; that his membership in these protected classes provides a defense to TDI's treatment of him; and that "his union, in failing to present any defenses at all on Mr. Preble's behalf, allowed the employer to treat him differently than similarly-situated non-handicapped or younger union members, or it permitted him to suffer a detriment to his employment because of his membership in those classes." (Preble Opposition, p. 12).

As noted, *infra*, while Plaintiff is admittedly over age 40, he has not established that he was disabled under Massachusetts law. Thus, any claim for discriminatory treatment may only be predicated on Preble's age. In addition, as noted previously, there is no evidence whatsoever that the Union permitted TDI to discharge him on the basis of his age and/or disability. Finally, Preble has presented no evidence of any similarly situated employees who were treated differently by the Union than was Preble. Plaintiff does not even allege a single incident in which another bargaining unit member's grievance was taken to arbitration. Thus, there is no evidence of disparate treatment here.

## VI. Conclusion

For all of the foregoing reasons, and on the record as a whole, the Court should grant Defendant Union's Motion for Summary Judgment in its entirety.

Respectfully submitted,

Defendant Painters and Allied Trades
District Council No. 35
By its Attorneys,

Jonathan M. Conti (BBO # 657163)
FEINBERG, CAMPBELL & ZACK, P.C.
177 Milk Street
Boston, MA 02109
(617) 338-1976

Dated this 27th day of January, 2005.

## CERTIFICATE OF COMPLIANCE

I, Jonathan M. Conti, hereby certify that pursuant to Local Rule 7.1, I have conferred in good faith with counsel of record in this matter.

Jonathan M. Conti

## CERTIFICATE OF SERVICE

I, Jonathan M. Conti, attorney for the Plaintiff, hereby certify that on this day I mailed a copy of the within document by first class mail, postage prepaid, to Paul L. Nevins, Esq., 47 Church Street, Wellesley, MA 02482, and to Mark W. Batten, Esq., Proskauer Rose LLP, One International Place, Boston, MA 02110.

Dated this ____day of January, 2005.

Jonathan M. Conti